## H. KEMPNER V. I. HEIDENHEIMER.

(Case No. 2146)

1. CONTRACT FOR SALE OF LAND—BREACH BY PURCHASER—MEASURE OF DAMAGES—SALABLE VALUE FIXED BY RESALE WITHIN REASONABLE TIME AFTER BREACH—The measure of damages for breach of contract of sale of land by the purchaser, is the difference between the contract price and the salable value of the land; and this value may be fixed by a fair resale, within a reasonable time after the breach and after notice to the party to be bound by the price as the value. (Citing 2 Suth. on Damages, 195, *et seq.*)

2. SAME—REASONABLE TIME A QUESTION OF FACT—What is a reasonable time is a question of fact varied by the circumstances of each case. The lapse of such period as would give room for fluctuations in the market, in the usual order of things, or of such period as would authorize the inference that the vendee had elected not to adopt this means of fixing the manner of liability, would be unreasonable.

3. SAME—RESALE—NOTICE TO DEFENDANT NECESSARY—To be bound by the price, the defendant should have notice of the sale. The sale is, in some sense, a sale of his property, and, to protect his interest, he is entitled to notice. (Citing Bowser *v.* Cessna, 62 Penn. St. 148.)

4. SAME—MEASURE OF DAMAGES WHERE RESALE NOT SUCH AS AUTHORIZED BY DEFENDANT'S BREACH—NECESSARY PROOF—Where the plaintiff has not made such sale as was authorized by the defendant's breach, he is only entitled to recover the difference between the market value of the land at the date of the breach and the price defendant had agreed to pay; and it is the duty of the plaintiff to establish by proof these factors in the measure of his damages.

ERROR from Galveston.    Tried below before the Hon. Wm. H. Stewart.

This suit was brought by H. Kempner, plaintiff in error, against Isaac Heidenheimer, defendant in error, for recovery of $25,000 damages, claimed by reason of a breach of contract of sale by the former to the latter, of his half interest in what is known as the Tremont Hotel property, consisting of seven lots, in block four hundred and forty-three, in the city of Galveston, Texas, the five-story, brick building thereon, together with all the household and kitchen furniture ; also, bar fixtures, office furniture, billiard tables, and unexpired insurance on same, one-half of which insurance amounted to $620.40 at the date of sale, to-wit, September 8, 1883.

The contract of sale, with modification, as finally agreed on by the parties, was as follows :

"Memorandum of agreement between Isaac Heidenheimer and Harris Kempner, of the purchase of the half interest of the latter, by the former, in the Tremont Hotel property, being lots eight, nine, ten, eleven, twelve, thirteen, and fourteen, in block four hundred and forty-three, of the city of Galveston, Texas, and all improvements thereon, including all household and kitchen and parlor furniture, beds, bedding, carpets, etc.; also all bar fixtures, billiard tables, and office furniture.    To bind this trade, $5,000 has, this day, been paid to Kempner, the receipt of which is hereby acknowledged.    Heidenheimer is also to deliver to Kempner, on receipt of deed, his note for $5,000, due thirty days after date, and, for the balance of $40,000, his three notes, in equal payments at one, two, and three years, making in all $50,000, the agreed price for the above described property. All notes to bear eight per cent. interest from date until paid, vendor's lien to be retained in deed, securing the notes, also policies of insurance, to an amount sufficient to keep Kempner fully protected, are to be continued and indorsed to Kempner ; loss, if any, payable to Kempner, as his interest may appear—one half premiums of

present policies for uncovered parts to be paid by Heidenheimer to Kempner, the taxes for this year (1883) to be paid half by Kempner, the other half by Heidenheimer. The rent of the above property being paid in advance to the fifteenth of this month, and from the fifteenth on, the rent goes to Heidenheimer.

(Signed)     H. KEMPNER.<br>
I. HEIDENHEIMER.

"(Modification) : Six per cent., instead of eight, no deed of trust. Terms : $10,000 cash, $10,000 twelve months, $10,000 twenty-four months, $10,000 thirty-six months, $10,000 forty-eight months. Kempner pays all taxes until January, 1884.

September 8, 1883.

(Signed)     H. KEMPNER,<br>
I. HEIDENHEIMER"

On September 8, 1883, H. Kempner made and signed a deed in favor of Isaac Heidenheimer to all of the property mentioned in their memorandum of sale of that date, with full warranty of the title. This deed, with sundry papers relating to the title to the property, was handed to the attorney of Heidenheimer for examination, who made objection on the ground that there was then pending, in the district court of Galveston county, a suit involving the title to one of the several lots upon which the hotel was situated. On September 11, 1883, Kempner, having in the meantime duly acknowledged the deed for record, met Heidenheimer and his attorney in the office of the latter, when, after some discussion in relation to the pending suit affecting the title to one of the lots, and an offer on the part of Kempner to give bond in ten times the amount with such sureties as would be entirely acceptable to Heidenheimer, as a guaranty of the title, Heidenheimer tendered to him a check for $10,000 as the cash payment, and four promissory notes, each for $10,000. Kempner objected to the form of the notes, and Heidenheimer refused to give notes of different form ; whereupon the conference ended, and the parties dispersed, Kempner taking with him the deed and Heidenheimer retaining his check and notes. The notes were in form non-negotiable, and this seems to have been Kempner's objection to them.

About a week thereafter, Kempner notified Heidenheimer that he would accept the check and notes previously tendered him, and would deliver the deed, but Heidenheimer refused to have anything further to do with the matter. Kempner was thereupon advised by his attorney that he had two remedies : a resale of the property and suit for

breach of the contract, in the event of a deficit, or a suit for specific performance of the contract. Accordingly, on September 24, 1883, Kempner instituted suit in the district court of Galveston county, against Heidenheimer, for specific performance of the contract of September 8, 1883, and Heidenheimer appeared and defended, Kempner continuing to collect the rents of the property, which were $12,000 per annum, payable in equal monthly installments.

On April 11, 1884, Kempner dismissed his suit against Heidenheimer for specific performance, at his own costs, and on the following day he and M. Marx, who owned the other half interest, sold the entire property mentioned in the contract of sale between himself and Heidenheimer, to W. E. Hughes for $75,000, and executed to him a deed therefor. One-fifth of this amount was ready money, and the balance was payable, in equal installments, in one, two, three, four, five and six years, with interest at six per cent.

It appears from the judge's conclusions of facts, that Kempner's half interest in the property was, on September 8, 1883, and for two or three months thereafter, worth in the market $50,000. He did not, after Heidenheimer's refusal to comply with the contract, advertise the property for sale or make use of any professional agency in his efforts to sell, nor did he, when about to sell to Hughes, notify Heidenheimer of that fact. On April 28, 1884, this suit was instituted.

The defendant answered by demurrer, general denial and by the following special plea: That the plaintiff, if he ever had any right to assert any claim for damages, arising out of the alleged contract and breach thereof, did elect not to assert such right, and did at once, after the alleged breach of contract, elect to assert and did assert and sue this defendant to enforce the specific performance of the contract, breach of which is now complained of, and claimed that the property belonged to defendant, and sought to collect the purchase money therefor as herein stated to have been done by suit in this honorable court, and the same was pending, undisposed of, on issue joined, when plaintiff sold and conveyed, as he states in his petition, the property previously alleged to have belonged to defendant. And, at the time of the alleged failure of defendant to accept and pay for the property, plaintiff notified him that the property had passed to him (defendant,) and that the same would be held out and treated and considered as his (defendants), and that plaintiff would require a specific performance of the alleged contract; and suit was at once instituted against defendant to enforce the contract, and the same was defended by defendant; wherefore plaintiff is estopped to claim damages by reason of the depreciation of the value of the property; because plaintiff had no right

to dispose of the property as he did, except for his own account and to submit to the loss at his own election, and not for account of defendant, as petition shows.

The court overruled the defendant's demurrer, and, on the trial of the cause, which was without a jury, rendered judgment in favor of the plaintiff for one dollar and costs of suit. The plaintiff excepted to the judgment, and has brought the case to this court by writ of error.

*Davis & Sayles*, for plaintiff in error, on the measure of damages, cited: Sedg. on Damages, sec. 190, and cases cited: 2 Addison on Cont., sec. 528; Thompkins *v.* Haas, 2 Barr. 74; Bowser *v.* Cessna, 62 Pa. St. 148; Allen *v.* Atkinson, 21 Mich 358–362; Aschom *v.* Smith, 2 Penrose & Watts, 217; Van Campern *v.* Knight, 63 Barb. 205; Kirk-Patrick *v.* Downing, 58 Mo. 32; s. c., 17 Am. Rep. 681–687.

*McLemore &. Campbell*, for defendant in error, on the measure of damages, cited : Kirkpatrick *v.* Downing, 58 Mo. 32; s. c., 17 Am. Rep. 681-687, and note thereto; Ganson *v.* [Madigan, 13 Wis. 75; Pickering *v.* Bardwell, 21 Wis. 569.

That a resale is merely evidence of value, and must be made within a reasonable time, they cited; Freyman *v.* Knecht, 78 Penn. St. 141 ; Atkins *v.* Cobb, 56 Ga. 86 ; Ullman *v.* Kent, 60 Ill. 271; M. & T. Bank *v.* F. & M. Nat. Bank, 60 N. Y. 40 ; Croak *v.* Owens, 121 Mass. 28 ; Smith *v.* Pettee, 7 Hun 334; Mallory *v.* Lord, 29 Barb. 454.

ROBERTSON, ASSOCIATE JUSTICE.—The measure of damages for breach of contract of sale of land by the purchaser, is the difference between the contract price and the salable value. This value may be fixed by a fair resale, after notice to the party, to be bound by the price as the value, within a reasonable time after the breach. What is a reasonable time is a question of fact, varied by the circumstances of each case. The lapse of such period as would give room for fluctuations in the market in the usual order of things, or of such as would authorize the inference that the vendor had elected not to adopt this means of fixing the measure of liability, would be unreasonable. 2 Suth. on Damages, 195, *et .seq.* To be bound by the price, the defendant should have notice of the sale. The sale is, in some sense, a sale of his property to pay his debt, and, to protect his interest, he is entitled to notice. Bowser *v.* Cessna, 62 Penn. St. 148.

The sale to Hughes was made, without notice to defendant, privately, seven months after the defendant's breach. We think the

court below did not err in holding that the defendant was not bound by that sale. In view of the time and manner of the sale, the price realized was not the fixed salable value of the property, but, with its attending circumstances, was merely evidence of such value, to be considered by the trial court in connection with the other evidence bearing upon the point.

Not making such sale as was authorized by the defendant's breach, the plaintiff was only entitled to recover the difference between the market value at the date of defendant's breach and the price defendant had agreed to pay. It was the duty of the plaintiff to establish these factors in the measure of his damage. The only proof he offered of the market value was that, without advertisement or the use of any professional agency, whilst his suit for specific performance was pending, he sounded such men as he came in contact with, and realized, in the trade with Hughes, the earliest and best price that was possible. The property was not fairly upon the market. There was proof that at the time of the defendant's refusal to perform, the property was considered of greater value than $50,000. If there was no sufficient evidence that the market value at that time was not equal to the contract price, there was none establishing a difference, or what the difference was. The plaintiff failed to make out his case for any greater recovery than that awarded in the judgment; and if we sat as a trial court, we cannot perceive in the testimony the supports for a different judgment than that rendered by the court below. The efforts made by plaintiff to sell the property, inconsistently with the objects of the suit then pending, and the sale to Hughes, if all the other testimony is discarded, do not show *prima facie*, or with any degree of certainty requisite to judicial action, that the market value was less than the contract price.

There is no error in the record, and the judgment is accordingly affirmed.

AFFIRMED.

[Opinion delivered March 5, 1886.]