Patrick Stephen MARTIN, Appellant,

v.

Dennis H. BIRENBAUM, Appellee.

No. 05–04–00939–CV.

Court of Appeals of Texas,
Dallas.

April 19, 2006.

Rehearing Overruled June 22, 2006.

Julia F. Pendery, Robert C. Wiegand, Shawn M. McCaskill, Donald E. Godwin, Godwin Gruber, LLP, Dallas, for appellant.

Dennis Birenbaum, Stephen F. Malouf, The Law Office of Stephen F. Malouf, P.C., Ernesto D. Sigmon, Law Office of Ernesto D. Sigmon, Dallas, for appellee.

Before Justices WHITTINGTON, FRANCIS and LANG.

## OPINION

Opinion by Justice FRANCIS.

A jury awarded Patrick Stephen Martin actual damages plus attorney's fees for Dennis H. Birenbaum's breach of a contract to purchase appellant's residence. Appellee then filed a motion for judgment non obstante verdicto contending appellant elected to accept liquidated damages, and waived his right to sue for actual damages. The trial court granted JNOV, and this appeal ensued.

In his sole issue, appellant contends the trial court erred in awarding JNOV because more than a mere scintilla of evidence supports the jury's findings in his favor, and appellee failed to establish conclusively his waiver defense or an election of remedies. We reverse the judgment and remand this appeal for entry of judgment in accordance with the jury's verdict.

A trial court may grant JNOV if a directed verdict would be proper or if no evidence supports one or more of the jury findings necessary to liability. *See* Tex.R. Civ. P. 301; *Tiller v. McLure*, 121 S.W.3d 709, 713 (Tex.2003); *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex.1991). A directed verdict for a defendant would be proper if the plaintiff

failed to present evidence raising a fact issue essential to his right of recovery or if he admits, or the evidence conclusively establishes, a defense to his cause of action. *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.,* 29 S.W.3d 74, 77 (Tex.2000). A defense is considered conclusively established if reasonable minds could not differ as to the truth of the controlling facts. *See Brown v. Zimmerman,* 160 S.W.3d 695, 702 (Tex.App.-Dallas 2005, no pet.).

In reviewing a JNOV, we view the evidence in the light most favorable to the jury's findings, considering only the evidence and inferences from the evidence that support the findings, and disregarding all evidence and inferences to the contrary. *Tiller,* 121 S.W.3d at 713. We will reverse the JNOV if there is more than a mere scintilla of probative evidence supporting the challenged findings. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 228 (Tex.1990); *Toles v. Toles,* 45 S.W.3d 252, 259 (Tex. App.-Dallas 2001, pet. denied). The evidence exceeds a scintilla when it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). When a party moves for JNOV on multiple grounds and the trial court grants JNOV without specifying which ground it found decisive, the appellant must show that JNOV was not proper on any of the asserted grounds. *See Sbrusch,* 818 S.W.2d at 394.

At the conclusion of trial, the trial court submitted seven questions to the jury. Because the jury found in appellant's favor, it did not answer the three questions addressing appellant's liability. In answering the other four questions, the jury found appellee failed to comply with the contract, his noncompliance was not excused by either appellant's noncompliance or waiver of compliance, and appellant was entitled to actual damages in the amount of $826,232.58 plus attorney's fees in the amount of $140,000. In the event appellee appealed the judgment, the jury awarded appellant an additional $20,000 for the appeal to this Court, and $10,000 if he appealed to the Texas Supreme Court. More than a mere scintilla of evidence supports each of the jury's findings.

The trial evidence shows that on May 10, 2002, the parties signed a contract obligating appellee to buy appellant's house for $3,600,000. Pursuant to the contract, appellee deposited $25,000 earnest money in escrow with American Title Company. At closing, the earnest money would fund appellee's down payment and expenses, with any remainder returned to him. If appellee defaulted, paragraph 15 of the contract authorized appellant to "(a) enforce specific performance, seek other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract." All notices between the parties were to be in writing.

While the contract was pending, appellee arranged to purchase a different residence. By letter dated July 9, 2002, appellee notified appellant and escrow officer Kaki Roach that he was terminating the contract, and he demanded the return of his earnest money. The contract specified that if one party demanded the earnest money, the other party would have thirty days to deliver a written objection to the escrow agent. Absent a timely, written objection from appellant, Roach had discretionary authority to release the earnest money to appellee.

Appellant did not deliver a written objection. However, when appellee failed to appear at the scheduled July 15, 2002 closing, appellant orally instructed Roach not

to release the earnest money to appellee. Although appellant did not demand the money for himself, Roach decided that, under the circumstances, she would not release the money to either party. American Title retained the earnest money through the date of trial.

By letter dated July 30, 2002, appellant demanded specific performance and threatened to sue appellee for breach of contract. On August 13, 2002, appellant filed suit against appellee for specific performance and breach of contract. Appellee subsequently filed a counterclaim.

In October 2002, appellant sold the property to a third party for $2,368,000. In connection with the sale, appellant averred to the purchaser that there were no other pending contracts on the property. Either during the October 2002 closing or in a telephone conversation around that time, appellant again instructed Roach not to return appellee's earnest money. On February 20, 2003, appellant non-suited his claim for specific performance.

■ We conclude, and appellee does not dispute, that the evidence described above provides more than a scintilla of evidence to support the jury's findings regarding appellee's breach of the contract and appellant's damages. *See Tiller*, 121 S.W.3d at 713; *Toles*, 45 S.W.3d at 259. We therefore turn to the question of whether the evidence supports the jury's finding adverse to appellee on his waiver affirmative defense.

■ Waiver is an affirmative defense available against a party who either (1) intentionally relinquishes a known right, or (2) engages in intentional conduct inconsistent with claiming that right. *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex.1996). Waiver may be established by showing a party has expressly renounced a known right. *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n, Inc.*, 1 S.W.3d 108, 111 (Tex.1999). Waiver may also be established by showing a party's prolonged silence or inaction in asserting a known right. *Id.* Courts will not find an implied waiver through a party's actions unless the intent to waive the party's right is clearly demonstrated by the surrounding facts and circumstances. *See id.* Ordinarily, waiver is a factual issue, but it may be established as a matter of law "when the facts and circumstances are admitted or clearly established." *Id.*

The jury answered "no" to the following question submitted on the waiver defense:

Was [appellee's] failure to comply with the Contract excused by waiver?

[Appellee's] failure to comply with the Contract would be excused if compliance was waived by [appellant]. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

In a critical portion of appellant's cross-examination, partially reprinted in appellee's brief, appellant testified about his options and intentions:

[Counsel]: [Appellant], in the event that you believed that [appellee] breached the contract, you had two options, you could either file a lawsuit, or you could keep the earnest money and release [appellee], correct?

[Appellant]: No, I wouldn't keep the earnest money, because the earnest money was put up for performance, and he did not perform. I didn't want the earnest money.... Do you think that that would anywhere near compensate me for the money he cost me, moving my antiques, delays, now you see me, now you don't? No way. The—the earnest money is—is being blown out of proportion. It's $25,000. I've got one antique that's worth $500,000, so what—what am I going to

do? We—we are just—we are not addressing the facts. The man welshed.

. . . .

[Counsel]: What it says here, it says, if buyer fails to comply with the contract, buyer will be in default. That in this case will be [appellee]; correct?

[Appellant]: Yes.

[Counsel]: All right. And it says and seller may, A, enforce specific performance, seek other relief as may be provided by law, or both, correct?

[Appellant]: Yes.

[Counsel]: And what that means is you can come in here and you can file a lawsuit, right?

[Appellant]: Yes.

[Counsel]: All right. Now, it also says, or, B, you can terminate this contract and receive the earnest money as liquidated damages, thereby releasing the parties from the contract, correct?

[Appellant]: That's what it says.

[Counsel]: All right. Now, there is no doubt in your mind that [appellee] wanted the earnest money back. Correct?

[Appellant]: Right.

[Counsel]: All right. He sent you a letter that said that?

[Appellant]: But there's also no doubt in my mind that he didn't deserve it, he didn't perform.

[Counsel]: I understand you believe that he didn't deserve it.

[Appellant]: Okay.

[Counsel]: And you told the title company—you told Cathy [sic] Roach at the title company, I don't want [appellee] ever to see that money. You told her not the [sic] give that money to [appellee], didn't you?

[Appellant]: Absolutely.

[Counsel]: All right. So you made the decision yourself not to let that money go back to [appellee]; correct?

[Appellant]: The deed was done. I'd been faulted.

[Counsel]: All right. And then why not after you'd said you can't have the money back, why didn't you just do what the contract says and said, you're hereby released. I'm going to keep the $25,000 and then we'll go down our road?

[Appellant]: I didn't read it that way at all. The earnest money is exactly what it says. I am in earnest to follow through on this contract and address and respect the contract. Now, that's how I saw it, and that's all I am going to say about it.

[Counsel]: All right. And so you'll agree with me that you filed this lawsuit and sued [appellee] and you said, in no uncertain terms do not give that earnest money back to [appellee].

[Appellant]: You're emphasizing it for your purpose, but for all practical purposes I requested that the title company did not refund him the money because he didn't perform. Now, that's all of—

[Counsel]: I am emphasizing it, but I am also correct. Aren't I, [appellant]?

[Appellant]: So am I correct. Aren't I, [counsel]?

[Counsel]: Well, you didn't give him the money back, did you?

[Appellant]: I sure didn't.

[Counsel]: And you filed a lawsuit.

[Appellant]: And he didn't follow through and close on the contract either, did he?

[Counsel]: You filed the lawsuit, didn't you, [appellant]?

[Appellant]: I sure did. Had no choice.

Appellee contends that appellant's admission on cross-examination that he prevented the return of appellee's earnest money establishes that he waived the right to sue for actual damages. Appellant characterizes his actions as efforts to induce appellee to comply with the contract rather than a waiver of his contractual rights. We conclude that more than a mere scintilla of evidence supports appellant's position and the jury's finding on waiver.

Although appellant admitted he acted to prevent the return of the earnest money to appellee because appellee did not perform the contract and did not deserve it, he also testified that he did not want the earnest money, that the earnest money was insufficient, and that he had no choice but to sue appellee because appellee had not performed the contract. In fact, the record shows appellant notified appellee in writing of his intent to pursue specific performance of the contract and, if necessary, a lawsuit for breach of contract. In contrast, nothing shows appellant provided any similar express notice, either oral or written, of an intent to accept the earnest money as liquidated damages. Moreover, after appellee failed to specifically perform the contract as demanded, appellant filed a lawsuit seeking specific performance and damages for breach of contract.

In other parts of his testimony, appellant disdained the earnest money as "insignificant" and "a joke." Appellant also testified that he instructed Roach not to return the earnest money to appellee because he believed it was necessary to preserve the earnest money for specific performance of the contract.

There is more than a mere scintilla of evidence showing that appellant intended to sue appellee rather than accept liquidated damages. More than a mere scintilla of evidence exists to show that appellant instructed Roach to retain the earnest money in order to facilitate specific performance of the contract rather than to obtain the earnest money for himself. Thus, we cannot conclude that appellee clearly established that appellant intentionally relinquished his right to sue or engaged in intentional conduct inconsistent with claiming the right to sue. *See Tenneco,* 925 S.W.2d at 643. We conclude that the record supports the jury's finding that there was no waiver. *See Tenneco,* 925 S.W.2d at 643; *Motor Vehicle Bd.,* 1 S.W.3d at 111.

Having concluded that the record supports the jury's finding that there was no waiver, we must also reject appellee's contention that the evidence conclusively establishes appellant's contractual election to accept liquidated damages. Appellee chose to submit the waiver issue to the jury but did not submit a question regarding election of remedies. Therefore, unless the record conclusively establishes that appellant elected to receive liquidated damages, appellee has waived his election contention for appeal. *See* TEX.R. CIV. P. 279; *Brown,* 160 S.W.3d at 702.

Appellee contends that merely applying appellant's testimonial "admissions" to the unambiguous language of paragraph 15 of the contract conclusively establishes that appellant chose to accept liquidated damages. Appellee argues that appellant terminated the contract by selling the property to a third party. Although appellant did not physically receive the earnest money, appellee contends he constructively received it by exercising "dominion and control" over it in a manner analogous to a conversion. *See Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444, 446–47 (Tex.1971) (concluding conversion may occur without a physical taking if one without authorization wrongfully assumes and exercises dominion and control over personal property

of another to exclusion of rightful owner). We disagree with appellee's contentions.

■ Appellant's sale of the property to a third party does not conclusively establish that he terminated the contract. By not closing the transaction, appellee materially breached the contract. *See Methodist Hospitals of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 882 (Tex.App.-Dallas 1991, writ denied). Appellee's breach excused appellant's further performance. *See Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 196 (Tex.2004). Thus, appellant was free to sell the property to a third party and assure the purchaser that there were no competing contracts on the property. After selling the property, appellant amended his pleadings to drop his request for specific performance, but he continued to pursue damages for breach of contract. Thus, we cannot conclude as a matter of law that appellant terminated the contract within the meaning of paragraph 15.

■ Likewise, the evidence does not conclusively establish that appellant "received" the earnest money. The contract does not contemplate constructive receipt of the earnest money. Nor does the contract mandate an interpretation that objecting to a demand for the earnest money made outside the normal closing process constitutes an election under paragraph 15. Furthermore, because appellant did not object in writing, the contract authorized Roach to release the earnest money to appellee at any time after thirty days from the issuance of appellee's written demand. We conclude the evidence does not conclusively establish appellee's election defense so as to entitle him to JNOV. *See Prudential*, 29 S.W.3d at 77; *Brown*, 160 S.W.3d at 702. In the absence of conclusive evidence, appellee waived the election issue by failing to submit it to the jury for determination. *See* Tex.R. Civ. P. 279.

■ In two responsive issues, appellee questions (1) whether the "election-of-remedies clause" of the contract permits an aggrieved seller to sue for damages while also preventing the buyer from retrieving his earnest money and (2) whether such actions waive the seller's right to sue. Because the contract at issue is a standardized Texas Real Estate Commission form, appellee further contends that resolving this case in appellant's favor would adversely impact public policy because aggrieved sellers will henceforth always choose both to withhold the earnest money and to sue for damages.

All three contentions presuppose that appellant withheld the earnest money from him and thus, effectively chose both remedies for default. The record, however, contains more than a mere scintilla of evidence showing that Roach, rather than appellant, chose not to release the earnest money to appellee. Because there are no jury findings regarding appellant's choice of remedies, we conclude that there is nothing for us to review. *See* Tex.R. Civ. P. 279. Therefore, we overrule appellant's responsive issues.

More than a mere scintilla of evidence supports the jury's express finding that appellant did not waive appellee's performance of the contract. Appellee has not shown that he is entitled to judgment as a matter of law on the waiver and election defenses he raised in seeking JNOV. Thus, we sustain appellant's sole issue for appeal.

We reverse the trial court's June 30, 2004 final judgment, reinstate the jury's verdict, and remand this case to the trial court for entry of judgment in the amount of $986,232.58, being the sum of actual damages and attorney's fees awarded by the jury for proceedings through the con-

clusion of this appeal, and for calculation of pre- and post-judgment interest, if any.