# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

========================
## ON MOTION FOR REHEARING
========================

## NO. 03-08-00549-CV

**Michael P. Barry, Appellant**

**v.**

**Donald Jackson and Karen Jackson, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. D-1-GN-03-000710, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

## O P I N I O N

Our opinion, concurring and dissenting opinion, and judgment dated January 15, 2010, are withdrawn, and this opinion, concurring and dissenting opinion and judgment are substituted in their place. We overrule the appellees' motion for rehearing.

In mid-July 2002, appellant Michael P. Barry entered into a contract with appellees Donald and Karen Jackson under which he agreed to buy their home for $370,000. The Jacksons then signed a contract to buy another house. Shortly after the Jacksons' option period on their new house expired, Barry informed the Jacksons that he would not be going through with the purchase. The Jacksons lost the earnest money they had deposited in conjunction with the contract for their new house, as well as an option-period fee and a fee to have the new house inspected. The Jacksons re-listed their house after doing a number of repairs, eventually selling it in late October 2003 for

$339,000. The Jacksons sued Barry for breach of contract. Following a bench trial, the trial court entered judgment in favor of the Jacksons, awarding them breach-of-contract damages in the amount of $46,965, $3,889 for "out of pocket" damages, and $23,165 in attorney's fees. Barry appeals, complaining that the trial court erred because (1) the Jacksons sought to be awarded Barry's earnest money, thus electing a contractual remedy that bars them from receiving damages; (2) there was insufficient evidence of the property's market value to support the trial court's award of damages; and (3) because the damages were improper, the attorney's fees award should be reversed. We will reverse the trial court's judgment, render judgment awarding the Jacksons $3,889 in damages, and remand the cause to the trial court for reconsideration of the issue of attorney's fees.

### Summary of the testimony

In July 2002, Barry, acting through his realtor,[1] approached the Jacksons about buying their home, which at the time was not listed for sale. On July 13, after some negotiations, the parties signed a contract under which Barry would buy the Jacksons' house for $370,000. The contract provided that Barry could cancel within seven days after receiving a seller's disclosure notice from the Jacksons; the disclosure was provided on July 15, 2002, giving Barry until July 22 to terminate the contract. Barry placed $3,000 in escrow on July 16. After signing the contract with Barry, the Jacksons started looking for a new house, and on July 17, they signed a contract to buy a house on Pebble Garden Court, placing $3,000 in escrow, paying the sellers $500 for the unrestricted right to cancel the contract within seven days, and paying $389 for an inspection.

---

[1] The same realtor represented both Barry and the Jacksons in preparing the contract. In 2003, the Jacksons used a different realtor to re-list and eventually sell the property.

2

On July 23, Barry had the Jacksons' property inspected. The inspector found about twenty issues, including wood rot in a door frame, a rotten wiring conduit under the deck, a broken handle on the built-in microwave, a leak in the kitchen faucet, and some problems with the pool. Mr. Jackson testified that he and his wife had only known that the microwave needed a new handle. That night, Barry met with the Jacksons to discuss the inspection report. Mr. Jackson testified that during the meeting, Barry said he thought the agreed price was too high and that the Jacksons would be "making too much profit." The next day, however, the parties' realtor called to say Barry "was going to proceed to buy [their] house," so the Jacksons let the option period run on the Pebble Garden house, intending to close that contract the same day they closed with Barry on their house. On July 25, one day after the Jacksons' option period expired, Barry called to tell the Jacksons that he was not going to buy the house. The Jacksons were forced to cancel their contract on the Pebble Garden house, losing their escrow money, option-period fee, and inspection fee.

After Barry backed out of the contract, the Jacksons put their house back on the market, listing it for sale by owner for $369,900 until mid-November 2002, at which time they discovered their dishwasher was leaking. They took the house off the market, replaced the dishwasher, and removed the hardwood flooring in the kitchen, replacing it with tile. They put the house back on the market in late May 2003, first listing it for sale by owner, and then contracting with a different realtor to list the house in July 2003. In late September 2003, they contracted to sell the house for $339,000; the contract closed in late October 2003.[2] The Jacksons' realtor at the time

---

[2] The Jacksons assert that under the later contract, they were obligated to pay $9,000 in closing costs and a $465 residential service policy, neither of which was required by the contract with Barry, and about $2,000 for repairs done at the buyers' request. The Jacksons further asserted that when they eventually sold the house, they had to include a trampoline, pool equipment, barstools, the refrigerator, and window treatments. However, we note that the Barry contract includes pool equipment and window treatments except for "curtains/valances" in six rooms.

of the sale testified that $339,000 was "probably pretty close" to the property's fair market value at the time the sale closed. The Jacksons sued Barry, seeking to recover damages for his breach.[3] In their amended petition, the Jacksons sought the following damages that they alleged were the result of Barry's breach: lost earnest money, option money, and inspection fees on the Pebble Garden house; $31,000 for the difference in the contract prices; and various consequential damages as a result of Barry not closing his contract as agreed. The Jacksons did not seek Barry's $3,000 in earnest money as an alternative remedy.

In a letter to the parties after the bench trial, the trial court stated that it was ruling in favor of the Jacksons, acknowledging that the proper measure of damages was the difference between the contract price and the market value of the property on the date of the breach.[4] The court also observed that "the market value is *fixed* by the actual resale price if it is a fair resale (open market) within a reasonable time after the breach." The court concluded that because the house was listed for a number of months at the original $370,000 contract price but that no offers were made until the final sale for $339,000, "the best evidence of the market value on the date of the breach is the resale price." The court stated, "The difference between the contract price and the resale price is $46,965. This is a windfall profit for the Jacksons, but, under the law, it is the benefit of their

---

[3] The Jacksons initially sued only their realtor and her brokerage company, filing suit in March 2003. They amended their suit in May 2003 to add Barry as a defendant. The Jacksons settled their claims against their realtor and her brokerage company for $17,000.

[4] We recognize that the court's letter to the parties is not a finding of fact, *Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990), but we believe it is nonetheless instructive background regarding the court's reasoning in calculating the Jacksons' damages.

4

bargain with Mr. Barry," concluding that the Jacksons should recover $46,965,[5] plus $3,889 for out-of-pocket damages and $24,590 in attorney's fees. The court later entered findings of fact and conclusions of law finding that the parties contracted for Barry to buy the Jacksons' house for $370,000; that the Jacksons paid $3,500 in earnest money and $389 in inspection fees for the Pebble Garden house and then lost the earnest money when they were forced to default on the contract; that the Jacksons eventually sold their house for $339,000 and that the contract required them to pay $15,965 more than did their contract with Barry. The court concluded that the Jacksons had incurred $46,965 in actual damages, $3,889 in additional out-of-pocket damages, and $23,165 in reasonable and necessary attorney's fees.

**Discussion**

On appeal, Barry contends that (1) the Jacksons elected a contractual remedy that bars them from receiving damages, (2) there was insufficient evidence of the property's market value to support the trial court's damages award, and (3) because the damages award was improper, the award of attorney's fees should be reversed. Because we agree that the evidence is legally insufficient to

---

[5] Presumably, the $46,965 award is the $31,000 difference in the contract prices, plus $15,965, which apparently includes repairs made during the year the Jacksons continued to own and live in the house, additional closing costs they paid under the new contract, and increased real estate commissions. It is unclear what the nearly $16,000 is for, however, because the trial court's findings of fact stated only that the October 2003 contract required the Jacksons "to pay $15,965 more than the Barry contract." The court did not provide further explanation, despite Barry's request for additional findings and conclusions, which was related to market value and the measure of damages. Barry did not specifically note a lack of information about the details of the $15,965 award.

establish the market value of the Jacksons' property at the time of Barry's breach, we hold that the Jacksons failed to prove that they were entitled to the $46,965 awarded by the trial court.[6]

We review a trial court's factual determinations after a bench trial for legal and factual sufficiency, using the same standards applied to jury verdicts. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). A challenge to the legal sufficiency will be sustained if there is a complete absence of evidence of an essential fact, the trial court was barred by rules of law or evidence from giving weight to the only evidence proving an essential fact, no more than a scintilla of evidence was offered to prove an essential fact, or the evidence conclusively establishes the opposite of the essential fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We view the evidence in the light most favorable to the trial court's determination, crediting favorable evidence if a reasonable fact finder could have done so and disregarding contrary evidence unless a reasonable fact finder could not. *Id.* at 807. The trial court as fact finder is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we will not disturb the court's resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *Young Chevrolet, Inc. v. Texas Motor Vehicle Bd.*, 974 S.W.2d 906, 914 (Tex. App.—Austin 1998, pet. denied); *see City of Keller*, 168 S.W.3d at 819.

Initially, we disagree with Barry that the Jacksons elected to receive the earnest money that was on deposit with the court and therefore were barred from seeking damages for breach of contract. Although the Jacksons filed a motion for summary judgment seeking the release of

---

[6] Because we conclude that the evidence is legally insufficient to support the trial court's damages award, we need not address whether the evidence was also factually insufficient.

Barry's earnest money, that was sought and granted by the trial court in partial satisfaction of the breach-of-contract damages they sought. Shortly after Barry announced his intention to breach his contract, the Jacksons refused to sign a form that would have given them the earnest money and released Barry from further liability. In their amended petition, the Barrys were very clear in seeking damages for breach of contract, which their contract with Barry allowed.[7] There is sufficient evidence to show that the Jacksons did not elect to receive liquidated damages, relinquish their right to sue, or engage in conduct inconsistent with that right. *See Martin v. Birenbaum*, 193 S.W.3d 677, 683-84 (Tex. App.—Dallas 2006, pet. denied). We overrule Barry's complaints related to the Jacksons' purported election of remedies.

We next turn to Barry's complaint related to the evidence supporting the trial court's damages award. Barry argues that the Jacksons did not present sufficient evidence to show the property's market value at the time of his breach. In their brief, the Jacksons state, "At the time of the breach, the market value was the contract price between Barry and the Jacksons of $370,000.00." They assert that $339,000 was the fair market value "[u]pon resale," and that they are entitled to the $31,000 difference, plus damages for repairs during the year they lived in the house after Barry breached the contract and additional closing costs that they were required to pay under the later, completed contract. We disagree.

The general rule in a breach-of-contract case is that damages should put the plaintiff in the same economic position he would have been in had the contract been performed. *See*

---

[7] The contract provided that if Barry breached, the Jacksons could seek specific performance and "other relief as may be provided by law," or could terminate the contract and "receive the earnest money as liquidated damages," in which case the parties were released from the contract.

*American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990). When the breached contract is for real estate, the measure of damages is the difference between the contract price and the property's market value at the time of the breach. *Kempner v. Heidenheimer*, 65 Tex. 587, 591 (1886); *Smith v. Herco, Inc.*, 900 S.W.2d 852, 861 (Tex. App.—Corpus Christi 1995, writ denied); *Ryan Mortgage Investors v. Fleming-Wood*, 650 S.W.2d 928, 935 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).[8] The market value of the property may be determined by "a fair resale, after notice to the party, . . . *within a reasonable time after the breach*." *Kempner*, 65 Tex. at 591 (emphasis added).

---

[8] The Jacksons note that *Kempner v. Heidenheimer*, 65 Tex. 587 (1886), was decided 120 years ago and assert that applying the *Kempner* measure of damages is problematic in the current real estate market, in which closings often occur within thirty days of a contract being made, arguing that "a Court would never find damages since the contract is an indicator of market value, and there would very rarely be any factors that would change the value in a short period of time." However, the *Kempner* rule was announced by the Texas Supreme Court, has not been disavowed, and has been applied consistently since its pronouncement. *See, e.g.*, *Telfener v. Russ*, 145 U.S. 522, 534 (1892) ("The measure of damages for breach of a contract of sale of land by the purchaser is the difference between the contract price and the salable value of the property. That is the rule laid down by the Supreme Court of Texas in *Kempner v. Heidenheimer*, 65 Tex. 587."); *Kollmeyer v. Stewart*, No. 05-00-01787-CV, 2001 Tex. App. LEXIS 8194, at *10 (Tex. App.—Dallas Dec. 11, 2001, no pet.) (not designated for publication); *Ozlat v. Nhan Van Hua*, No. 01-97-00568-CV, 1998 Tex. App. LEXIS 3020, at *8 (Tex. App.—Houston [1st Dist.] May 21, 1998, no pet.) (not designated for publication); *Tindall v. Ledford*, No. 07-96-00400-CV, 1998 Tex. App. LEXIS 1180, at *20 (Tex. App.—Amarillo Feb. 25, 1998, pet. denied) (not designated for publication); *Smith v. Herco, Inc.*, 900 S.W.2d 852, 861 (Tex. App.—Corpus Christi 1995, writ denied); *Johnson v. Price*, No. 14-84-00656-CV, 1985 Tex. App. LEXIS 7394, at *2-3 (Tex. App.—Houston [14th Dist.] Jan. 24, 1985, no writ) (not designated for publication); *Roselawn Cemetery, Inc. v. Martin*, 415 S.W.2d 442, 445 (Tex. Civ. App.—San Antonio 1967, no writ). When a buyer defaults, the seller may seek specific performance, *see* Restatement (Second) of Contracts § 360 cmt. e (1981) ("seller who has not yet conveyed is generally granted specific performance on breach by the buyer" because "it may be difficult for him to prove with reasonable certainty the difference between the contract price and the market price of the land"), or usually receives any earnest money and retains the value of the use and ownership of the property.

The Jacksons sold their house in October 2003, more than a year after Barry breached the contract. Although we recognize that "[w]hat is a reasonable time is a question of fact, varied by the circumstances of each case," *id.*, the Jacksons provided no evidence related to whether thirteen months was a reasonable time, especially considering that they took the house off the market for a number of months and had the property listed for sale by owner, rather than through a realtor who could list it in the MLS system, for a time. For example, they did not present testimony by an appraiser or realtor as to whether the real estate market had undergone significant fluctuations during that year, that the eventual sales price would have been a fair market value for the property at the time of the breach, or whether market conditions in October 2003 were similar to those in August 2002. Recent events in the nationwide real estate market show without a doubt that one year can make an enormous difference in the value of real estate, and Texas courts have recognized this fact. *See id.* (period of time that "would give room for fluctuations in the market in the [usual] order of things . . . would be unreasonable"); *Chiu Moon Chan v. Montebello Dev. Co.*, No. 14-06-00936-CV, 2008 Tex. App. LEXIS 5980, at *11 (Tex. App.—Houston [14th Dist.] July 31, 2008, pet. denied) (mem. op.) (quoting *Naylor v. Siegler*, 613 S.W.2d 546, 547 (Tex. Civ. App.—Fort Worth 1981, no writ)) ("'[r]eal property has a fluctuating value' and '[t]here is no way to ascertain at any given time what the value of a particular tract of real property might be in the future'"). As plaintiffs, it was the Jacksons' burden to establish the property's market value as of August 2002, not October 2003, and thus it was their burden to establish that the later sale was within a reasonable amount of time.[9] *See*

---

[9] In *Kempner*, the supreme court held that the trial court did not err in refusing to use the price obtained for property in a private sale seven months after the breach. 65 Tex. at 591-92. In *Kollmeyer*, the court held that a price from a resale four months after the breach was some evidence

9

*Kempner*, 65 Tex. at 592; *see also Barraza v. Koliba*, 933 S.W.2d 164, 170 (Tex. App.—San Antonio 1996, writ denied) (only evidence of market value was buyer's testimony about property's value at time of trial six years later; "[a]ccordingly, the Barrazas have failed to establish this component of their damages"); *Smith*, 900 S.W.2d at 860 (plaintiff called appraiser to testify as to value of property as represented and actual value of property at time of breach). Because the Jacksons did not present any evidence that would support reasonable inferences either that the October 2003 sale occurred within a "reasonable time" or that the October 2003 sales price reflected the property's value at the time of Barry's breach more than a year earlier, the trial court erred in awarding them the difference between the two contract prices.

As for the remaining breach-of-contract damages, the trial court found that the terms of the October 2003 contract required the Jacksons "to pay $15,965 more than the Barry contract." Thus, the additional damages are related to the difference in market value between the Barry contract and the October 2003 contract. In other words, the October 2003 contract not only provided a contract price $31,000 lower than did the Barry contract, it apparently burdened the Jacksons with nearly $16,000 in less favorable contractual terms. Because we have held that the evidence is legally

---

showing market value, apparently assuming but not discussing whether this was a reasonable time. 2001 Tex. App. LEXIS 8194, at *12. In *Ozlat*, a sale nine days after the breach was sufficient evidence of the property's market value. 1998 Tex. App. LEXIS 3020, at *9. In *Corpus Christi Development Corp. v. Carlton*, on the other hand, the court held that testimony about the property's value at the time of trial, seventeen months after the breach, was no evidence of the property's value at the time of the breach. 644 S.W.2d 521, 522 (Tex. App.—Corpus Christi 1982, no writ). Similarly, in *Barraza v. Koliba*, because "[t]he only evidence arguably admitted on this issue [of market value] again came in through the Barrazas, whose testimony was limited to the market value of the land *as of the date of trial*," there was no evidence of the property's market value at the time of the contract. 933 S.W.2d 164, 169-70 (Tex. App.—San Antonio 1996, writ denied).

insufficient to support findings that the October 2003 contract was within a reasonable time or reflected the property's value at the time of the breach, the evidence is likewise insufficient to support the trial court's award of nearly $16,000 that was subsumed into the later contract's terms.

The Jacksons did, however, establish that they were entitled to recover the earnest money they lost when they had to break their contract for the house on Pebble Garden Court, as well as the option fee and inspection costs. Although Barry insists that the full measure of damages should be limited only to the difference in market value and contract price, the Jacksons presented ample evidence that they entered into the Pebble Garden contract due to Barry's signing of the contract and that they were forced to break the contract, losing $3,889 in inspection fees, option fees, and earnest money, when Barry informed them that he was breaching his contract too late for them to cancel the Pebble Garden contract without penalty. *See Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied) ("measure of damages for breach of contract is that which restores the injured party to the economic position he would have enjoyed if the contract had been performed" and may include foreseeable consequential damages that can be traced to breach).[10]

We reverse the trial court's judgment and render judgment that the Jacksons are entitled to recover $3,889 in damages for Barry's breach of contract. Because we have significantly recalculated the damages award, we remand the cause to the trial court for recalculation of attorney's

---

[10] Barry argues that the measure of damages following a breach of a real estate contract are limited solely to the difference in contract price and market value at the time of breach, citing *Kempner*, 65 Tex. at 591. That measure, however, explains how courts should determine basic damages for breach of a real-estate contract. It does not bar litigants from seeking foreseeable consequential damages that can be traced to the breach. *See Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied).

fees.  *See Young v. Qualls*, 223 S.W.3d 312, 314-15 (Tex. 2007) (quoting *Barker v. Eckman*, 213 S.W.3d 306, 314 (Tex. 2006)) (holding that issue of attorney's fees should be retried if damages awarded are reduced on appeal and appellate court cannot be reasonably certain that trial court was not influenced by erroneous damages award); *see also Bossier Chrysler-Dodge II, Inc. v. Rauschenberg*, 238 S.W.3d 376, 376 (Tex. 2007) (quoting *Barker*, 213 S.W.3d at 314) (remanding issue of attorney's fees to trial court for recalculation after damage award was significantly reduced); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (providing factors to consider in calculating contingent attorney's fees).

_____

David Puryear,  Justice

Before Justices Patterson, Puryear and Pemberton;
    Concurring and Dissenting opinion by Justice Patterson

Reversed and Rendered in part; Reversed and Remanded in part on Motion for Rehearing

Filed:  March 19, 2010

12