**AMS CONSTRUCTION COMPANY, INC., d/b/a AMS Staff Leasing, Appellant,**

v.

**K.H.K. SCAFFOLDING HOUSTON, INC., Appellee.**

**No. 01–09–00360–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 28, 2011.

Rehearing Overruled May 25, 2011.

Alene Ross Levy, Katharine D. David, Lynne Liberato, Haynes & Boone, LLP, Houston, TX, Donald Bradley Dickinson, Dickinson & Bartlett, P.C., William E. Reid, Reid & Dennis, P.C., Dallas, TX, for Appellant.

John M. O'Quinn, The O'Quinn Law Firm, Lloyd E. Kelley, Lloyd E. Kelley & Associates, Pete Mai, Tammy Tran, The Tammy Tran Law Firm, Wanda McKee Fowler, Wright Brown & Close, LLP, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

JANE BLAND, Justice.

In this case, an employer sues its staff leasing company for its failure to comply with its agreement to provide workers' compensation insurance for one of the employer's injured workers. A jury found

that the staff leasing company failed to comply with the agreement, that its failure was not excused, and that it committed fraud. The trial court rendered judgment on the jury's breach of contract findings.

The staff leasing company, AMS Construction Company, Inc. d/b/a AMS Staff Leasing, appeals the jury's verdict in favor of the employer, K.H.K. Scaffolding Houston, Inc. AMS contends that: (1) the trial court lacked subject matter jurisdiction to hear KHK's claims; (2) no evidence supports the jury's findings of breach of contract and fraud; (3) KHK waived its argument that AMS's workers' compensation insurance policy covered the injured worker; and (4) KHK and the injured worker improperly colluded against AMS, and this invalidates the trial court's judgment on public policy grounds. We conclude that the trial court had jurisdiction to hear the suit, legally sufficient evidence supports the jury's breach of contract findings, AMS did not preserve its claim of waiver in the trial court, and no evidence exists of a collusive agreement. We therefore affirm the jury's verdict and the trial court's final judgment.

## BACKGROUND

### *Underlying Facts*

In May 1999, AMS and KHK entered into an Employee Leasing Agreement. Jin Yung Kim, as chairman of KHK, signed the agreement on behalf of KHK, and Doug Lowery, as president of AMS, signed on behalf of AMS. The term of the agreement was one year, but it automatically renewed unless either party cancelled it. In relevant part, the leasing agreement provides:

> WHEREAS Client Company [i.e. KHK] has contracted with AMS for leased employees on various projects AND

> WHEREAS AMS wishes to provide labor on such projects
> FOR CONSIDERATION HEREINAFTER THE NAMED PARTIES AGREE AS FOLLOWS:
> [....]
> *ARTICLE 3[ ]* INDEMNITY AND INSURANCE
> (a) AMS agrees to obtain and pay for Workers' Compensation and Employee Liability Insurance, including Occupational Disease Coverage, providing statutory benefits and with liability limits of not less than $1,000,000 for Employer Liability Coverage. AMS agrees to furnish Client Company with Certificates of Insurance indicating compliance with the above requirements....
> (b) AMS agrees to protect, indemnify[,] and hold Client Company harmless against all loss, cost or expense which Client Company may incur or sustain in connection with or in consequence of any claim of occupational injury relating to AMS's employee arising in any manner out of or in any way connected with or a result of performance of this subcontract, or breach thereof, or any activity caused by any negligent act or omission on the part of AMS, no matter by whom or on whose behalf such claim, demand, suit or action may be asserted or brought. In addition, AMS will service any such claim or demand, defend any such suit or action, and judgment, including court costs which may be awarded therein.

Under the agreement, AMS agreed to obtain workers' compensation insurance and to indemnify KHK for any claims of occupational injuries brought against it by leased employees. AMS also took responsibility for handling the payroll for leased employees. In exchange, KHK agreed to

pay AMS a service fee plus administrative overhead. The agreement does not define "employee", "AMS employee", or "leased employee."

KHK had the complete authority to hire leased employees. AMS representatives maintained that to be a leased employee, a KHK worker had to submit an AMS employment application to AMS and be counted as a leased employee. In contrast, according to KHK representatives, KHK never required an employee to submit an AMS application to obtain workers' compensation insurance and that it had numerous AMS leased employees who had never completed an AMS application. After the negligence suit, AMS and KHK amended the leasing agreement to require that each new employee submit a completed application to obtain workers' compensation coverage.

AMS representatives admitted at trial that if a KHK worker was on the AMS payroll, then AMS treated him as a leased employee regardless of whether it had his application on file; it also charged KHK a fee to cover that worker with workers' compensation insurance.

To place an employee on the AMS payroll, KHK reported him in a "turnaround report," which it submitted to AMS. Employees then received their paychecks from AMS one week following the week they worked. The pay period ran from Wednesday to Tuesday. KHK reported payroll by submitting the turnaround report on Thursdays. AMS processed the turnaround report and issued paychecks on Sundays. AMS delivered the paychecks on Thursdays and received a check for reimbursement from KHK in the amount of gross payroll, the administrative overhead, and premiums for workers' compensation insurance for each worker reported on the turnaround report. The more employees KHK leased from AMS, the larger the fee KHK paid to AMS.

In February 2000, Osman Sosa began work at KHK's factory. He worked approximately twenty times at the factory. During the work week of March 22 to March 28 of 2000, Sosa worked twenty-four hours. On March 30, KHK reported Sosa's hours in the turnaround report and submitted it to AMS. AMS charged and received a fee to provide workers' compensation insurance for that work week. AMS issued Sosa a check dated April 6 for the twenty-four hours he worked during the week of March 22 to March 28.

For the work week of March 29 to April 4, KHK reported Sosa's hours in a turnaround report and submitted it to AMS. Sosa severely injured his hand on March 31, the day after KHK first reported Sosa's hours to AMS. AMS charged and received a fee to provide Sosa with workers' compensation insurance for that week. AMS also issued Sosa a paycheck dated April 13 for that week.

KHK reported Sosa's injury to AMS. Andrew Price, AMS's risk manager, confirmed that Sosa was in its payroll system. Price then filed an Employer's First Report of Injury with AMS's insurance company's administrator. The administrator forwarded that report to the Texas Worker's Compensation Commission (the Commission).[1]

### Proceedings in the trial court

About a week after the accident, Sosa sued KHK for negligence and gross negli-

1. Effective September 1, 2005, the former Texas Workers' Compensation Commission was abolished and its rules and duties were transferred to the Texas Department of Insurance, Division of Workers' Compensation. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 265, §§ 8.001(b), .004(a), 2005 Tex. Gen. Laws 607, 608. We use "the Commission" to refer to both.

gence in state district court. KHK notified Price of Sosa's lawsuit. Price contacted Sosa's attorney to tell him that Sosa was a leased employee of AMS and covered by workers' compensation insurance. He advised the attorney to contact the insurance company's administrator. The insurance company's administrator informed the Commission that no coverage existed for Sosa because no employee-employer relationship existed between Sosa and AMS. The Commission then notified Sosa that the insurance company denied his claim.

KHK filed a third party action against AMS, asserting causes of action for breach of the leasing agreement, declaratory judgment, fraud, fraudulent misrepresentation, and negligent misrepresentation. On the first day of trial on Sosa's negligence claims, KHK moved to abate, contending that the exclusive remedy provision of the Texas Workers' Compensation Act barred Sosa's suit because Sosa was an AMS employee and covered by workers' compensation insurance. *See* TEX. LAB.CODE ANN. § 408.001(a) (West 2006) ("Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee."). The trial court denied the motion and proceeded with the trial. The jury returned a verdict for Sosa on his negligence claims and awarded him actual and punitive damages.

Before it signed the judgment, the trial court allowed KHK to go to the Commission to resolve Sosa's employment status. KHK requested informal dispute resolution and a benefit review conference. The Commission denied the request because: (1) KHK failed to identify a benefit dispute

or its request was vague and unclear; (2) insufficient documentary information existed on the benefit dispute; (3) the insurance company denied that an employee/employer relationship existed between AMS and Sosa; and (4) Sosa had not pursued the claim. The Commission advised KHK that once it obtained additional documentation, KHK could submit a new request for informal dispute resolution.

After the Commission declined KHK's request, the trial court signed a final judgment on the jury's verdict awarding Sosa actual and punitive damages. It severed Sosa's claim against KHK from KHK's claim against AMS, thereby according finality to Sosa's claims. The case then proceeded between KHK and AMS. Before the trial, AMS moved to abate, contending that the trial court lacked jurisdiction because neither KHK nor Sosa had exhausted administrative remedies before the Commission. According to AMS, the Commission had exclusive jurisdiction to resolve the issue of whether Sosa was a leased employee of AMS under the leasing agreement. AMS and KHK then stipulated that KHK was not named on the insurance policy AMS obtained from its insurance carrier, and that KHK was not listed on any endorsement to the policy. Declining to abate, the trial court proceeded with a jury trial on the claims.

The jury found AMS liable for breach of contract and fraud. During the trial, KHK and AMS had stipulated to the amount of actual damages in the event of a jury verdict finding liability, equal to the amount of the judgment entered in Sosa's negligence trial against KHK and KHK's reasonable attorney's fees. KHK and AMS also stipulated to the existence of causation. The trial court signed a final judgment for KHK on the stipulated damages.

## SUBJECT MATTER JURISDICTION

AMS contends that the trial court lacked subject matter jurisdiction to enter a judgment against it on KHK's breach of contract claim. According to AMS, the Commission is vested with the exclusive jurisdiction to resolve whether Sosa qualified as a leased employee under the staff leasing agreement, and because KHK's claims depend on Sosa's employment status, the trial court lacked jurisdiction to hear the case.

### Standard of Review

 Whether an agency has exclusive jurisdiction depends upon statutory interpretation, and is a question of law we review de novo. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex.2002). Trial courts are courts of general jurisdiction. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex.2000). Absent a contrary showing, courts of general jurisdiction are presumed to have subject matter jurisdiction. *Id.* There is no similar presumption that administrative agencies are authorized to resolve disputes. *Subaru of Am.*, 84 S.W.3d at 220. Rather, they exercise only those powers the law, in clear and express statutory language, confers upon them. *Id.* Courts should not imply additional authority to agencies, nor may agencies create for themselves any excess powers. *Id.* But, if the legislature has vested an agency with exclusive jurisdiction to hear the dispute, the courts have no subject matter jurisdiction until all administrative proceedings are complete. *In re Entergy Corp.*, 142 S.W.3d 316, 321–22 (Tex.2004). A party can turn to the courts only after first exhausting all administrative remedies. *Id.; Subaru of Am.*, 84 S.W.3d at 221.

### The Workers' Compensation Act and the Staff Leasing Services Act

The Texas Workers' Compensation Act provides that the exclusive remedy for an employee covered by workers' compensation insurance for a work-related injury is recovery of workers' compensation benefits. *See* TEX. LAB.CODE ANN. § 408.001(a); *Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 516 (Tex.2007). The Act provides a three-tier administrative procedure for the resolution of disputes over workers' compensation benefits: a benefit-review conference, a contested-case hearing, and an administrative appeal. TEX. LAB.CODE ANN. §§ 410.021–034, 410.151–169, 410.201–209 (West 2006 & Supp.2010); *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 514 (Tex.1995). Only a claimant, a subclaimant, a carrier, or an employer who has contested the compensability of injury are entitled to request a benefit review conference. 28 TEX. ADMIN. CODE § 141.1(a) (2011) (Tex. Dep't of Ins., Div. of Workers' Comp., Dispute Resolution—Benefit Review Conference). A claimant or a carrier may appeal a Commission Appeals Panel's decision by filing suit in the district court. TEX. LAB.CODE ANN. § 410.251, 410.301–308 (West 2006).

 Under the Staff Leasing Services Act, a staff leasing company decides whether to provide workers' compensation insurance coverage for both itself and the client company for the employees it leases. *See Tex. Workers' Compensation Fund v. Del Indus. Inc.*, 35 S.W.3d 591, 596 (Tex. 2000). If a leasing company elects coverage, its policy covers both the leasing company and its client company as to the leased employees. *See id.* But if the leasing company elects not to obtain workers' compensation coverage, the Labor Code relegates both the leasing company and its client to the status of nonsubscribers in assessing liability. *See* TEX. LAB.CODE ANN. §§ 91.042(d), 406.033 (West 2006). Section 406.033 permits negligence suits against non-subscribers and prevents them from

asserting certain common law defenses. *Id.* § 406.033 (West 2006). Thus, the staff leasing company and the client company are "co-employers" to the extent of the consequences of the staff leasing company's election. *Del Indus. Inc.*, 35 S.W.3d at 596. A client company's decision not to lease all of its workers to the staff leasing company may result in a split workforce where some employees have workers' compensation through the staff leasing company and other do not. *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 145 (Tex.2003).

### Exclusive Jurisdiction of the Commission

The Texas Supreme Court in *American Motorists Insurance Co. v. Fodge* held that the Texas Workers' Compensation Act "vests the power to award compensation benefits solely in the Workers' Compensation Commission." 63 S.W.3d 801, 803 (Tex.2001). A court cannot award compensation benefits to an injured employee, except on appeal from a Commission ruling. *Id.* at 804. In addition, a court cannot award damages for the denial of compensation benefits to an injured employee without a determination by the Commission that such benefits are due. *Id.* The supreme court further concluded that a claim for wrongful deprivation of workers' compensation benefits brought by an injured worker against an insurance carrier fall within the Commission's exclusive jurisdiction. *Id.; see also In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327, 328 (Tex.2009) (holding that trial court did not have jurisdiction to adjudicate injured worker's bad-faith suit against his workers' compensation carrier for denying medical benefits because Commission had exclusive jurisdiction to determine claimant's entitlement to medical benefits); *Henry v. Dillard Dept. Stores, Inc.*, 70 S.W.3d 808, 809 (Tex.2002) (holding that trial court did not have jurisdiction to adjudicate injured

worker's suit against self-insured employer for bad faith denial of reasonable and timely benefits); *Macias v. Schwedler*, 135 S.W.3d 826, 830 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (holding that trial court did not have jurisdiction to adjudicate wrongful death action based on various torts and brought by representative of deceased worker against workers' compensation carrier and its employees because the claims depended on determination that worker sustained compensable injury).

Our sister courts have extended *Fodge* to also preclude an employer's suit for benefits against a workers' compensation carrier based on the same denial of benefits. *See Sonic Sys. Int'l., Inc. v. Croix*, 278 S.W.3d 377, 387 (Tex.App.-Houston [14th Dist.] 2008, pet. denied); *see also In re Tex. Mut. Ins. Co.*, 157 S.W.3d 75, 77–82 (Tex.App.-Austin 2004, orig. proceeding) (holding that Commission had exclusive jurisdiction over breach of contract claim brought by employer's assignee, who was subclaimant of injured employee, against workers' compensation carrier because it presupposed existence of workers' compensation policy and plainly sought benefits due under policy).

The Commission's exclusive jurisdiction, however, does not extend to all cases that touch on workers' compensation issues. The district courts decide disputes about whether the Act's exclusive remedy provision applies as a defense to an injured worker's personal injury suit. *See, e.g., Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 481 (Tex.2005) (holding that company did not establish that it was covered by workers' compensation insurance for temporary employee's injury because, even if temporary worker agency was contractually obligated to provide workers' compensation insurance that named company as insured, company produced no evidence of

such policy); *Wingfoot Enters.*, 111 S.W.3d at 149 (holding that both temporary worker provider and provider's client company were "employers" of an injured temporary employee for the purposes of the exclusive remedy provision). Apropos to this case, not all disputes involving a staff leasing company, a client company, and a workers' compensation carrier are Commission-bound determinations. In *Del Industrial Inc.*, for example, the supreme court held that the workers leased from a staff leasing company to a client company were not the client company's employees for the purposes of computing the premiums for the client company's own workers' compensation insurance. 35 S.W.3d at 596. The court, not the Commission, made this determination. Courts regularly preside over the hashing out of the contractual relationships between staff leasing companies, their client companies, and even on occasion their carriers.

### Analysis

 This case does not involve a dispute about workers' compensation benefits from a carrier under an insurance policy. Here, the dispute is whether AMS was contractually obligated to obtain workers' compensation benefits for Sosa from an insurance carrier, and the consequence of its failure to do so when no carrier stepped in to provide coverage, and the Commission denied benefits. KHK's breach-of-contract claim does not presuppose the existence of a workers' compensation policy covering Sosa; instead it presupposes that AMS bound itself under the leasing agreement to obtain a policy that would have covered Sosa's injury.

Neither AMS nor KHK seeks workers' compensation benefits as a claimant or a subclaimant under an insurance policy. Sosa sued KHK as a non-subscriber. He denied he was a leased employee of AMS.

The insurance company that issued AMS's workers' compensation insurance policy denied him coverage, and AMS has never produced a policy that covers Sosa or KHK. After Sosa's personal injury trial, the Commission denied KHK's request for a benefit review conference. Unlike the facts of *Fodge* and its progeny, no pending claim exists whose resolution requires a determination of a claimant's entitlement to workers' compensation benefits. *See Tex. Mut. Ins. Co. v. Tex. Dept. of Ins., Div. of Workers' Compensation*, 214 S.W.3d 613, 619 (Tex.App.-Austin 2006, no pet.) ("The foundation of . . . the supreme court's analysis in *Fodge* was a pending claim whose resolution required a determination of a claimant's entitlement to workers' compensation benefits."). Here, the Commission already determined that no coverage exists. Its jurisdiction does not extend to resolving whether AMS was contractually required to purchase insurance coverage for Sosa. That issue is a matter of contract interpretation, one ripe for a district court to decide.

The dispute resolution process set out in Chapter 410 of the Labor Code is designed to resolve workers' compensation benefits disputes between an insurance carrier and a benefits claimant. *See HCBeck, Ltd. v. Rice*, 284 S.W.3d 349, 349 (Tex.2009) ("The purpose of the Texas Workers' Compensation Act is to provide employees with certainty that their medical bills and lost wages will be covered if they are injured."). The Labor Code's lack of established procedures for resolving disputes between parties other than a claimant and the insurance carrier demonstrates that the Legislature did not intend to give the Commission exclusive jurisdiction over disputes that do not directly or indirectly involve a claimant, a carrier, or one seeking benefits through a claimant. *See Tex. Mut. Ins. Co.*, 214 S.W.3d at 620 (holding that Legislature's failure to provide any

procedures for resolving disputes regarding employer's liability insurance coverage demonstrated that Division did not have exclusive jurisdiction over these disputes). AMS relies on *Morales,* but that case is inapposite. *See Morales,* 241 S.W.3d at 515. In *Morales,* the supreme court dealt with the issue of venue, holding that employee status is an issue of compensability under the statute for venue purposes. *Id.* at 517–19; *see also* TEX. LAB.CODE ANN. § 410.252(b)(1) (stating that appeals from Commission decisions regarding compensability or benefit eligibility generally must be filed in county where employee resided at time of injury or death). In framing the issue before it as one of venue, the supreme court in *Morales* explicitly rejected the notion that the issue under consideration was one of subject-matter jurisdiction. *See id.* at 516 n. 1 ("The court of appeals, the trial court, and the parties all treat the issue as one of subject-matter jurisdiction, but we have held that it is not.").

KHK could not assert the workers' compensation bar against Sosa's non-subscriber suit because AMS took the position that Sosa was not its employee and that KHK had no workers' compensation coverage for him through AMS. The dispute here is whether AMS was obligated to obtain such coverage. The Commission's denial of KHK's request for a benefit conference after Sosa's negligence trial demonstrates the Commission's lack of authority to resolve this contractual dispute between a staff leasing company and its client company, where no claim to workers' compensation benefits exists. *See Del Indus. Inc.,* 35 S.W.3d at 596. The trial court, with its presumptive jurisdiction, fills this gap. Accordingly, we hold that the trial court properly exercised jurisdiction to adjudicate KHK's claims, and it did not err when it refused again to abate the matter for adjudication by the Commission.

## BREACH OF CONTRACT— LEGAL SUFFICIENCY

AMS asserts that no evidence exists to support the jury's finding that AMS breached its contract with KHK. In addition to its affirmative finding that AMS failed to comply with the agreement, the jury found that KHK's previous failure, if any, to comply with a material obligation of the same agreement did not excuse AMS's failure to comply with the agreement. AMS moved for judgment notwithstanding the verdict, contending that no evidence supported the jury's finding that AMS had breached the leasing agreement or that Sosa had been a leased employee. The trial court denied the motion.

### *Standard of Review*

A trial court may disregard a jury's verdict and render a jnov if the evidence is legally insufficient to support the jury's findings or if a directed verdict would have been proper because a legal principle precludes recovery. TEX.R. CIV. PRO. 301; *see Fort Bend Cnty. Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 394 (Tex.1991); *Williams v. Briscoe,* 137 S.W.3d 120, 124 (Tex.App.-Houston [1st Dist.] 2004, no pet.); *John Masek Corp. v. Davis,* 848 S.W.2d 170, 173 (Tex.App.-Houston [1st Dist.] 1992, writ denied). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). In making this determination, we credit favorable evidence if a reasonable factfinder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* So long as the evidence falls within the zone of reasonable disagreement, we may not substitute our judgment for that of the fact-finder. *Id.* at 822. The fact-finder is the sole judge of the credibility of the wit-

nesses and the weight to give their testimony. *Id.* at 819. Although we consider the evidence in a light most favorable to the challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.* at 822.

### Applicable Law

To prevail on a breach of contract claim, a party must establish that: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. *See Valero Mktg. & Supply Co. v. Kalama Int'l,* 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, no pet.). "A breach occurs when a party fails or refuses to do something he has promised to do." *Dorsett v. Cross,* 106 S.W.3d 213, 217 (Tex.App.-Houston [1st Dist.] 2003, no pet.) (citing *Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc.,* 826 S.W.2d 638, 640 (Tex. App.-Houston [14th Dist.] 1992, no writ)).

### Analysis

Under the leasing agreement, AMS agreed to provide KHK with leased employees. AMS further agreed to "obtain and pay for Workers' Compensation . . . Insurance" for these leased employees. In addition, AMS agreed to indemnify KHK against all loss which KHK may incur as a result of an AMS employee's claim of occupational injury due to AMS's breach of the agreement. The agreement does not define "leased employee" or "AMS employee."

AMS urges that the evidence proves a worker could not become its "leased employee" unless he submitted an AMS employment application to AMS. On the contrary, KHK adduced evidence at trial that it designated a worker as a "leased employee" by reporting the worker on one of the turnaround reports that KHK submitted weekly to AMS to generate payroll. The evidence shows that other KHK workers were undisputedly leased employees even though they had not submitted AMS applications. When the contracting parties set forth their own definitions of the terms they employ, we are not at liberty to disregard those definitions and substitute other meanings. *Healthcare Cable Sys., Inc. v. Good Shepherd Hosp., Inc.,* 180 S.W.3d 787, 791 (Tex.App.-Tyler 2005, no pet.). Here, the parties' agreement does not define the term, "leased employee." Nor do any of the contractual provisions shed light on its meaning.

According to testimony presented at trial, it was normal procedure and practice for KHK to designate a worker as a leased employee by reporting the worker on a turnaround report. During the work week before his injury, Sosa worked twenty-four hours. KHK reported those hours in the turnaround report. AMS charged KHK a fee in part to cover AMS's obligation to provide workers' compensation insurance for the employees, including Sosa, for that work week, and KHK paid it. AMS issued Sosa a check for the hours he worked. For the work week of March 29 to April 4, the week of Sosa's injury, KHK again reported Sosa's hours in a turnaround report. AMS charged and received a fee to obtain workers' compensation coverage for the leased employees for that week. It issued Sosa a check for that week. Sosa was injured on March 31. We hold this evidence supports the jury's implied finding that Sosa was a "leased employee" of AMS prior to, and on the date of, his injury. The agreement in force at the time of Sosa's injury required AMS to provide Sosa with workers' compensation insurance and to cover KHK for any loss

resulting from Sosa's injury due to its failure to purchase insurance. AMS did not provide KHK with a workers' compensation policy identifying KHK as an insured and stipulated that it could not produce one. We hold that the evidence is legally sufficient to support the jury's finding that AMS breached the leasing agreement with KHK.

█ AMS also contends that KHK's judgment for breach of contract fails as a matter of law because the leasing agreement does not require AMS to indemnify KHK for KHK's own negligence or gross negligence. The leasing agreement provides in relevant part:

(b) AMS agrees to protect, indemnify[,] and hold Client Company harmless against all loss, cost or expense which Client Company may incur or sustain in connection with or in consequence of any claim of occupational injury relating to AMS's employee arising in any manner out of or in any way connected with or a result of performance of this subcontract, or breach thereof, or any activity caused by any negligent act or omission on the part of AMS, no matter by whom or on whose behalf such claim, demand, suit or action may be asserted or brought.

(c) Client Company agrees to protect, indemnify[,] and hold AMS harmless against liability, expense . . . and claims of any nature whatsoever, which AMS becomes legally obligated to pay as a result of the acts, errors, or omissions of Client Company related directly or indirectly to this Employee Leasing Agreement, including but not limited to Client Company's negligence, gross negligence or intentional acts or omissions. . . .

We agree with AMS that the leasing agreement does not require it to indemnify KHK for KHK's negligence and gross negligence. The agreement, however, re-

quires that AMS indemnify KHK for any loss caused by a claim of occupational injury suffered by a leased employee if the loss was in any way connected with AMS's failure to perform its obligations under the agreement. Here, AMS failed to provide a workers' compensation policy to Sosa, a leased employee. As a result, KHK suffered a loss because it was unable to invoke the exclusive remedy provision of the Texas Workers' Compensation Act at the Sosa's trial to bar his suit. *See* Tex. Lab. Code Ann. § 408.001(a). Accordingly, we hold that the jury's finding of breach of contract based on AMS's contractual duty to indemnify KHK does not fail as a matter of law.

AMS failed to provide workers' compensation coverage for Sosa and to indemnify for the loss related to his claim of occupational injury. This failure was a breach of its contractual duties. The parties stipulated to causation and damages, and AMS raises no issue as to these elements on appeal. We uphold the trial court's breach-of-contract judgment.

## CONTRACT DEFENSES

### *Waiver Defense*

█ AMS next maintains that KHK waived its breach of contract claim that AMS failed to purchase coverage for Sosa because KHK failed to obtain a jury finding in Sosa's negligence trial on whether a workers' compensation insurance policy covered him. An employer who carries workers' compensation insurance may assert, as an affirmative defense, that an employee's work-related injuries are compensable solely under the Workers' Compensation Act. *Pierce v. Holiday*, 155 S.W.3d 676, 678 (Tex.App.-Texarkana 2005, no pet.).

█ Waiver is an affirmative defense to a contract claim. *See* Tex.R. Civ.

P. 94. In order to rely on the affirmative defense, a defendant must plead, prove, and secure findings to sustain the defense. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988). The record does not reflect that AMS requested a jury question on the defense it now seeks to assert. By failing to do so, it has not preserved its argument for appellate review. *See* Tex.R.App. P. 33.1(a); *Rivas v. Cantu,* 37 S.W.3d 101, 116–17 (Tex.App.-Corpus Christi 2000, pet. denied) (holding defendant failed to preserve statute of frauds defense by, *inter alia,* failing to request jury charge or object to absence of charge issue); *Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 763 (Tex.App.-El Paso 2000, no pet.) (holding defendant waived estoppel and waiver defenses by failing to submit a jury question).

### *Public Policy Defense*

AMS lastly contends that, after Sosa's negligence trial, Sosa and KHK entered into a collusive Mary Carter-type agreement and assignment of rights, and this agreement and assignment fatally tainted the later trial between AMS and KHK. According to AMS, the collusive agreement between Sosa and KHK poisoned the jury's understanding of the case and renders the contract judgment against AMS void, as a matter of public policy.

A Mary Carter agreement exists when a settling defendant retains a financial stake in the plaintiff's recovery and remains a party at the trial of the case. *Elbaor v. Smith,* 845 S.W.2d 240, 247 (Tex.1992). Under this definition, a plaintiff cannot secretly settle with one defendant and go to trial against the remaining defendants, while the settling defendant, who remains a party, guarantees

the plaintiff a minimum payment, which may be offset in whole or in part by an excess judgment recovered at trial against the other defendants. *Id.* Such collusion creates an incentive for the settling defendant to ensure that the plaintiff succeeds in obtaining a sizable recovery, and thus motivates the defendant to assist in the plaintiff's presentation of the case. *Id.* But, "a Mary Carter agreement would not exist if the settling defendant acquires a financial interest in the outcome of the trial and then testifies as a non-party witness." *Id.* at 247 n. 14.

Here, Sosa was not a party to the trial between AMS and KHK. Sosa sued KHK and obtained a final judgment against KHK. Sosa also was not a settling party. After the trial court entered final judgment against KHK, Sosa, at that point a judgment creditor, filed an application for a turnover order of KHK's claims against AMS up to the amount of his judgment against KHK, as permitted by statute. *See* Tex. Civ. Prac. & Rem.Code Ann. § 31.002 (West 2008). KHK opposed the turnover order. The trial court granted it. AMS points to no evidence that would raise any doubt that KHK and Sosa entered into any type of voluntary settlement, agreement or assignment of rights. We hold that no evidence shows that an improper collusive agreement existed in this case.

### CONCLUSION

We hold that the trial court had jurisdiction to hear KHK's contract claims against AMS, legally sufficient evidence supports the jury's finding on breach of contract,[2] AMS did not preserve its claim of waiver for appeal, and no evidence exists of a

---

**2.** AMS also challenges the fraud findings by the jury, contending that no evidence exists to support them. Because we uphold the

breach of contract claim and the trial court did not render a judgment on fraud, we need not address this appellate challenge.

collusive agreement between KHK and the injured worker. We therefore affirm the judgment of the trial court.