Opinion filed November 25, 2025



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00235-CV
_____

## J&T LEGEND HOMES ABILENE, LLC, Appellant

## V.

## SHAWN WEEKLEY, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 28373-B**

### M E M O R A N D U M   O P I N I O N

This is an appeal from a bench trial. It arises from an uncompleted real estate transaction for the sale of a parcel of real estate with a newly constructed home. Appellee, Shawn Weekley, was the buyer in the transaction. He filed suit against the seller and homebuilder, Appellant, J&T Legend Homes Abilene, LLC (J&T). Weekley alleged that J&T breached the sales contract by failing to provide necessary documentation to Weekley's lender to finance the purchase. The trial court entered judgment in favor of Weekley. J&T challenges the judgment in four issues. We affirm.

*Background Facts*

Weekley and J&T executed a "New Home Contract" on January 12, 2021, for the purchase of a new home located at 337 Martis Way in Abilene to be constructed by J&T.[1] The contract provided for a purchase price of $204,000. The transaction also involved a "Third Party Financing Addendum" executed by the parties that provided for Weekley to obtain "VA Guaranteed Financing."

The initial contract provided that the house would be ready for occupancy no later than March 12, and that closing would occur on or before March 12.[2] Weekley testified that the closing date changed multiple times at J&T's request. The last scheduled closing date was May 14.

Weekley sought to obtain VA financing for the purchase from USAA. Weekley asserted that J&T breached the contract by failing to provide documentation required by USAA to fund Weekley's VA loan. Weekley offered into evidence copies of e-mails from Lindsey Miranda with USAA that she sent to the realtors for both parties regarding documents needed by USAA to fund the loan.

Miranda sent an e-mail on February 25 that sought information about the status of the construction. This e-mail advised the realtors that Miranda needed to know when the construction was ninety-five percent complete, and that "the appraisal turn-around time may take up to the 3 weeks." In this regard, the Third Party Financing Addendum required an appraisal of the property. On May 6, Miranda sent an e-mail to the realtors that specified that various documents were "needed from the builder" including a builder's energy conservation certificate and

---

[1]Unless otherwise noted, all dates in this opinion occurred in 2021.

[2]"Closing," a term of art commonly used in real-estate transactions, is defined as "[t]he final meeting between the parties to a transaction, at which the transaction is consummated; esp., in real estate, the final transaction between the buyer and seller, whereby the conveyancing documents are concluded and the money and property transferred." *Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.*, 228 S.W.3d 431, 434 (Tex. App.—Dallas 2007, no pet.) (quoting BLACK'S LAW DICTIONARY 272 (8th ed. 2004)).

a certificate of occupancy from a local building authority. On May 10, Miranda sent another e-mail to the realtors requesting the same information. This request was prefaced with the following sentence: "In order to proceed with final review and schedule a closing date, the following items are needed from the builder."

Closing did not occur on May 14. As noted previously, Weekley asserted that the transaction did not close because J&T failed to provide required documents to USAA so that USAA could fund the loan. J&T asserted that closing did not occur on May 14 because Weekley did not pay the sales price of $204,000 to the escrow agent on that date.

Miranda sent another e-mail to the realtors on May 18 that provided as follows:

> I just wanted to follow up on the status of the remaining items needed in order to proceed to final review and schedule closing:
>
> • Builder's certification that this new dwelling was constructed to meet the energy conservation standards of the International Residential Code (IRC).
>
> • Provide copy of the Certificate of Occupancy (CO), or equivalent document, issued by a local building authority.[3]

Weekley asserted that this e-mail indicated that USAA was still willing to finance the purchase after May 14. In this regard, Weekley indicated that he still wanted to purchase the property after May 14. Weekley's realtor, Shawna Abernathy, testified that the transaction would have closed had J&T provided the documents that USAA requested. She further testified that Weekley still wanted to proceed with the transaction after May 14, and that he had ordered appliances for the home that were scheduled to arrive in the near future. Abernathy also opined that the housing market

---

[3]The evidence indicated that J&T obtained a certificate of occupancy for the property on May 12.

3

in Abilene was "crazy" in 2021 in that home prices were increasing very quickly on a month-to-month basis. She attributed the increase in prices on the post-pandemic time period and growth in the Abilene economy.

Jesse Evans is the owner of J&T. When asked by J&T's attorney whether he "eventually elect[ed] to terminate [the] contract," Evans replied: "It was never . . . terminated because the buyer defaulted." He explained that "[t]he buyer was in default because they did not produce funds on -- at closing on May 14th." Evans signed a "Release of Earnest Money" on May 18 wherein he unilaterally attempted to terminate the contract.

The trial court issued a letter dated June 26, 2023, predicated on the following statement: "The Court makes the following findings and issues the following rulings after a bench trial." A copy of the letter was filed with the trial court clerk's office. Both in its letter and its subsequent judgment, the trial court awarded Weekley actual damages of $31,188 and attorney's fees of $10,513.13. J&T challenges the judgment in four issues.

*Analysis*

Prior to addressing the merits of J&T's issues, we must address the effect of the trial court's letter ruling. We note at the outset that the letter specified that it contained the trial court's findings. Additionally, the letter contained a recitation of the trial court's legal reasonings as well as citations to cases upon which its rulings were based.

Following a bench trial, and within twenty days after the judgment is signed, any party may request the trial court to file written findings of fact and conclusions of law. TEX. R. CIV. P. 296. Findings of fact in a case tried to the trial court have the same force and dignity as the findings made by a jury in its verdict, and we apply the same sufficiency standards as if reviewing evidence supporting a jury's answer.

4

*Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We review a trial court's conclusions of law de novo. *In re Ill. Nat'l Ins. Co.*, 685 S.W.3d 826, 835 (Tex. 2024) (orig. proceeding).

Findings of fact and conclusions of law need not be in any particular form. *Moore v. Jet Stream Invs., Ltd.*, 315 S.W.3d 195, 208 (Tex. App—Texarkana 2010, pet. denied). But they must be in writing and filed with the clerk of the court. TEX. R. CIV. P. 296. It is possible for findings and conclusions to be contained in a trial court's letter to counsel if the letter is filed of record. *Moore*, 315 S.W.3d at 208. Here, the trial court's letter provides an extensive explanation of the basis for its ruling, which satisfies the purpose of Rule 296. *See IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 442 (Tex. 1997).

Moreover, the trial court filed the letter ruling with the clerk of the court, J&T relied on the letter in its "Motion for Reconsideration, Motion to Modify, and/or Alternatively Motion for New Trial," and the trial court did not subsequently issue any formal findings of fact and conclusions of law. Based upon these circumstances, we conclude that the trial court's letter ruling contains its findings of fact and conclusions of law. *See In re Estate of Miller*, 446 S.W.3d 445, 452 (Tex. App.—Tyler 2014, no pet.); *Moore*, 315 S.W.3d at 208.

J&T asserts in its first issue that Weekley failed to establish that he performed, tendered performance, or was excused from performing under the contract. It contends that Weekley's primary obligation under the contract was to pay at closing and that he failed to do so. J&T further asserts that it was under no obligation to extend the closing date past May 14.[4]

---

[4]We note that the First Court of Appeals has held that a contract for the sale of real property does not automatically expire on the specified closing date unless timely performance is made a material term of the contract. *Vlasak for Silber Family Tr. v. Taxco, Inc.*, No. 01-16-00191-CV, 2017 WL 2952351, at

5

A plaintiff asserting a claim for breach of contract must prove (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required, or that his performance was excused; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff sustained damages as a result of the breach. *AMS Const. Co. v. K.H.K. Scaffolding Hous., Inc.*, 357 S.W.3d 30, 41 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd); *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Here, the trial court found that J&T breached the contract by failing to provide documents to the lender. In doing so, the trial court implicitly found that Weekley's payment of the contract price was excused. In its first issue, J&T challenges the legal sufficiency of the evidence supporting this implicit finding.

As we have said, in an appeal from a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them as we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). When parties challenge the legal sufficiency of the evidence supporting an adverse finding on which they did not have the burden of proof at trial, they must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable

---

*6–7 (Tex. App.—Houston [1st Dist.] July 11, 2017, pet. denied) (mem. op.) (citing *Deep Nines, Inc. v. McAfee, Inc.*, 246 S.W.3d 842, 846 (Tex. App.—Dallas 2008, no pet.)). Time is not ordinarily of the essence in a contract. *Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 19 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The mere fact that a contract states a date for performance does not imply that time is of the essence. *Id.*

6

factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

The evidence is legally insufficient to support a finding only if (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

To obtain a recovery for breach of contract under the facts of this case, Weekley had the burden to establish that his performance was excused. *See AMS Const.*, 357 S.W.3d at 41. Weekley presented evidence that J&T failed to provide documents required by USAA to fund the VA loan contemplated by the parties' contract. In addition to his oral testimony and that of his realtor, Weekley also offered e-mails from USAA's loan officer. J&T attempts to minimize the e-mails from USAA because USAA did not produce them in response to a deposition on written questions. However, the trial court admitted the e-mails into evidence at trial, and J&T does not challenge their admission on appeal.

The parties' agreement obviously contemplated that, as the seller and homebuilder, J&T would be required to supply documents and information needed by USAA to fund Weekley's VA loan. The documents requested by USAA from J&T were not onerous. As such, the trial court's implicit determination that Weekley's payment of the contract price was excused by J&T's refusal to provide necessary documents is supported by legally sufficient evidence. We overrule J&T's first issue.

J&T's second and third issues challenge the trial court's damage awards. It asserts in its second issue that the trial court erred in awarding temporary housing damages to Weekley. The trial court awarded Weekley $3,188 for temporary housing through July 2021. This amount included Weekley's costs for staying at an extended-stay hotel and temporary housing through Airbnb. J&T challenges this award on two grounds: (1) that Weekley owned other properties in Abilene where he could have stayed; and (2) the temporary housing damages were improper "reliance" damages.

The general rule in a breach-of-contract case is that damages should put the plaintiff in the same economic position he would have been in had the contract been performed. *See MSW Corpus Christi Landfill, Ltd. v. Gulley-Hurst, L.L.C.*, 664 S.W.3d 102, 106 (Tex. 2023); *American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990). Actual damages for breach of contract may include both direct and consequential damages. *Signature Indus. Servs., LLC v. Int'l Paper Co.*, 638 S.W.3d 179, 186 (Tex. 2022). Direct damages typically include benefit-of-the-bargain damages. *Id.*

Had the contract between Weekley and J&T been performed, Weekley would have had a place to reside after closing. Weekley testified that he was living in an extended-stay hotel while waiting for J&T to finish construction on the house. The

fact that Weekley lived in an extended-stay hotel while waiting for the home to be completed refutes J&T's claim that Weekley could have lived at one of his other properties.[5]  Further, Weekley's need for a place to stay is a benefit-of-the-bargain that Weekley would have derived after closing if J&T had not breached the contract. As such, J&T is incorrect in its assertion that Weekley's temporary housing costs were reliance damages.  Accordingly, the trial court did not err in awarding Weekley damages for his temporary housing costs.  We overrule J&T's second issue.

J&T's third issue concerns the trial court's award of damages of $28,000 to Weekley based upon the value of the home at the time that J&T breached the contract.  The evidence indicated that J&T placed the property back on the market in August 2021.  It executed a contract at that time to sell the property for $242,000 to Gregory Dykes.  However, the sale to Dykes did not occur.  Evans testified that the increase in price for the sale was attributable to J&T performing additional work on the property including re-leveling the yard, adding sprinklers, landscaping, and sod, and adding blinds and appliances.  Based upon this evidence, the trial court made the following findings and conclusions:

> The law provides that the measure of expectancy damages is the difference between the contract price ($204,000) and the property's fair-market value at the time of the breach.  *Barry v. Jackson*, 309 S.W.3d 135, 140 (Tex. App. – Austin 2010, no pet.)[.]  Because the contract for resale (the Dykes Contract) was within a reasonable time after the breach by Defendant (about three months later), the agreed price in the contract for resale ($242,000) is some evidence of the fair-market value of the property at the time of Defendant's breach.  The Court finds that the Plaintiff has met his burden to prove that the fair-market value of the property at the time of the breach was $242,000. The difference between the fair-market value at the time of the breach and the original contract is $38,000.

---

[5]As noted by Weekley, there is no evidence that he could have lived at one of his other properties.

In addition, the law provides that the measure of expectancy damages may include foreseeable consequential damages that can be traced to the breach. *Barry*, 309 S.W.3d at 141. The Court finds that the Plaintiff has met his burden to prove that he suffered damages of $1,988.00 for temporary housing at an extended-stay hotel, and $1,200.00 for temporary housing through Airbnb, which were foreseeable consequential damages traced to the breach. This brings the damages to $41,188.00.

However, the Court finds that the Defendant is entitled to an offset of $10,000 for improvements made to the property between the time of the breach and the time of the Dykes Contract, as testified to by Jesse Evans. This amount will be subtracted from the damages owed by Defendant.

Therefore, the damages awarded to Plaintiff are $31,188.

J&T asserts that the contemplated sale to Dykes is not evidence of the property's value at the time of the breach. Relying upon *Barry v. Jackson*, J&T asserts that the contract with Dykes cannot be used to establish value because the transaction was not completed. J&T also contends that there is no evidence that the Dykes contract occurred within a reasonable time in order for it to be used to determine the value of the property in May 2021.

In *Barry*, the Third Court of Appeals noted that "[w]hen the breached contract is for real estate, the measure of damages is the difference between the contract price and the property's market value at the time of the breach." 309 S.W.3d 135, 140 (Tex. App.—Austin 2010, no pet.) (citing *Kempner v. Heidenheimer*, 65 Tex. 587, 591 (1886)). "The market value of the property may be determined by 'a fair resale, after notice to the party . . . *within a reasonable time after the breach*.'" *Id.* at 140–41 (quoting *Kempner*, 65 Tex. at 591). The court in *Barry* rejected the use of a sale of the property occurring more than a year after the breach of the real estate contract, concluding that there was no evidence that a sale occurring thirteen months after the

breach was within a reasonable time to establish value at the time of the breach. *Id.* at 141–42.

Here, the subsequent contract was executed only three months after the breach. As such, the holding in *Barry* is factually distinguishable. The trial court determined in this case that the subsequent contract was executed within a reasonable time after the breach, and that it served as evidence of the value of the property at the time of the breach. Even though the Dykes contract was not completed, it was some evidence of what J&T believed the value of the property to be near the time of the breach as well as what another buyer was willing to pay for it. Further, the trial court made an allowance of $10,000 for the improvements made by J&T to the property prior to the execution of the Dykes contract. Accordingly, the evidence of the price in the Dykes contract, less the allowance for subsequent improvements, is evidence of the value of the property at the time of J&T's breach of the contract.

J&T additionally contends that Weekley was required to account for any costs that he avoided by not having to perform the contract. J&T asserts that Weekley did not present any evidence of the "interest on a loan, insurance, property taxes, etc." that he avoided by not purchasing the property. But as set out in *Barry*, damages are to be assessed at the time of the breach. *See id.* at 140. The items that J&T raises would be Weekley's post-breach costs of ownership. As such, they are not part of the equation in determining "the difference between the contract price and the property's market value at the time of the breach." *See id.*

We overrule J&T's third issue.

In its fourth issue, J&T challenges the factual sufficiency of the findings that are the subject of his first three issues. If a party attacks the factual sufficiency of an adverse finding on an issue in which the other party had the burden of proof, the

11

attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher*, 660 S.W.2d at 58. In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Id.* at 407. We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. *Id.*

For the same reasons stated above in addressing the legal sufficiency of the evidence supporting the trial court's liability and damage findings, we conclude that the evidence is factually sufficient to support the judgment in favor of Weekley. Both the trial court's determination that Weekley was excused from performing the contract based upon J&T's breach of contract and the trial court's damage calculations were not so contrary to the overwhelming weight of the evidence to be clearly wrong and manifestly unjust. *See id.* We overrule J&T's fourth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

November 25, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.