**Opinion issued April 21, 2020**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-18-00992-CV

———————————

**ARC DESIGNS, INC., Appellant**

**V.**

**NABORS INDUSTRIES, INC., Appellee**

On Appeal from the 269th District Court
Harris County, Texas
Trial Court Case No. 2015-16752

## MEMORANDUM OPINION

Appellee, Nabors Industries, Inc. ("Nabors"), contracted with appellant, Arc Designs, Inc. ("ADI"), for the fabrication and construction of certain drilling rig equipment. After ADI failed to deliver the equipment as agreed under the terms of the parties' Fabrication and Construction Contract ("Contract"), Nabors terminated

the Contract and sued ADI for breach of contract. ADI brought a counterclaim, asserting that Nabors breached the Contract by failing to pay as agreed. The trial court rendered summary judgment in favor of Nabors on its claim and awarded it damages. The trial court denied ADI's motion for summary judgment on its counterclaim. After a trial to the court on the limited issue of attorney's fees, the trial court awarded Nabors its fees.

On appeal, ADI presents four issues. In its first issue, ADI contends that the trial court erred in granting summary judgment for Nabors because ADI presented evidence raising a fact issue regarding the applicable termination and damages provisions in the Contract. In its second and third issues, ADI contends that the trial court erred in granting Nabors's summary-judgment motion, and denying that of ADI, because the trial court misconstrued the Contract terms as providing a right of reimbursement and failed to award ADI certain sums due. In its fourth issue, ADI contends that the trial court erred in awarding attorney's fees.

We affirm.

## Background

Nabors owns and operates land-based drilling rigs and provides oilfield services. ADI is a drilling-structure manufacturing facility and metal fabricator. On February 12, 2014, Nabors retained ADI to fabricate and construct five sets ("Sets") of drilling rig components. Each Set was comprised of a mast and a substructure.

2

The Contract Price was $651,248.00 for each mast and $1,276,667.00 for each substructure, or a total of $1,927,915.00 for each Set. The parties agreed, as provided in Article 2.2 of the Contract, that Nabors was to pay the Contract Price for each Set in installments, based on the completion of certain "milestones" in the fabrication and construction process, as follows:

> 20% of Contract Price within 10 days of execution of [the] Contract by both parties.
>
> 25% of Contract Price upon [ADI's] receipt of all structural steel in [ADI's] fabrication facility complete with MTR's that meet contract requirements.
>
> 45% of Contract Price upon completing of all Work, including electronic delivery of the Equipment's data book and all API nameplates affixed to the Equipment.
>
> 10% of Contract Price for final payment pursuant to the delivery dates set forth on [the Schedule of Delivery].

Pursuant to the terms of Contract, ADI was to deliver one Set per month for five consecutive months, beginning in October 2014 and ending in February 2015. According to the Schedule of Delivery, Set 1 was to be delivered on October 31, 2014; Set 2 on November 30, 2014; Set 3 on December 31, 2014; Set 4 on January 31, 2015; and, Set 5 on February 28, 2015. The Schedule of Delivery included a "penalty date" occurring 30 days after each due date. And, Article III of the Contract, governing delivery, provided:

> 3.1     [ADI] shall complete the Work as set forth in [Schedule of Delivery]. . . . [I]f any of the Equipment is delivered after the Penalty Date . . . , then [ADI] shall be liable to [Nabors] for liquidated damages in an amount equal to one (1%) of the

3

Contract Price for each day that delivery is delayed, provided that in no event shall [ADI] be liable to [Nabors] for more than ten percent (10%) of the Contract Price.

3.2    Time is of the essence with respect to the performance of the Work and there shall be no extension or postponement of the Delivery Date.  The Parties agree that this Article is a material term of this Contract for all purposes.

3.3     . . . . Any change to [the Schedule of Delivery] will only be made in writing by agreement of the Parties. . . .

In the event that ADI failed to "conduct its operations" under the Contract with diligence or "otherwise breached its obligations," Article IX, "Unsatisfactory Performance," authorized Nabors to elect whether to cover or to pursue other remedies under the law or in equity:

9.1    If [ADI] has failed to conduct its operations under this Contract in a diligent, skillful or workmanlike manner . . . , or if the [ADI] has otherwise breached its obligations hereunder, [Nabors] may give [ADI] written notice in which the cause of the dissatisfaction shall be specified. Should [ADI] fail to remedy the dissatisfaction within five (5) days after the receipt of the written notice, [Nabors] may, at its discretion take one of the following courses of action:

9.1.1 [Nabors] may retain another Contractor (''Substitute Contractor") to complete the remaining Work. In such event [Nabors] shall have no obligation to pay [ADI] any additional sums whatsoever and [ADI] shall be responsible to pay to [Nabors] the difference between the outstanding relevant Purchase Order and the actual cost of completing the Work with the Substitute Contractor.

9.1.2 [Nabors] may take over and complete the Work using [ADI's] facilities, equipment and personnel. If [Nabors] takes over the Work, [Nabor's] cost in completing the Work with no allowance for use of [ADI's] facilities,

4

> > > equipment and personnel shall be deducted from the Contract Price . . . .
>
> > 9.1.3   Upon [Nabors's] request and pursuant to [Article XI], [ADI] shall allow [Nabors] to remove any and all Equipment in whatever stages of completion as well as other manufactured products related to the Equipment.
>
> 9.2   The remedies set forth in this Article are in addition to, and not in lieu of any and all other remedies available to [Nabors] in law or equity.

And, Article 24.4 provided that the "prevailing party in any lawsuit shall be entitled to recover reasonable and necessary attorneys' fees."

Article XI, "Termination of the Contract," provided that Nabors could also terminate the Contract, either at will or for unsatisfactory performance under Article IX above, as follows:

> 11.1   This Contract may be terminated
>
> > 11.1.1   By [Nabors] upon 10 days' notice.
> >
> > . . . .
> >
> > 11.1.3   By [Nabors] for unsatisfactory performance as set forth in Article IX above.

In the event that Nabors terminated the Contract pursuant to Article 11.1.1, i.e., at will, Article 11.2 governed the amounts owed to ADI as follows:

> [Nabors] shall pay to [ADI] all amounts due and owing at the date of termination together with reasonable additional costs incurred by [ADI] in terminating the Work including if applicable, costs of shipping and the costs of cancellation of subcontracts or purchase orders for materials, equipment and supplies.  In no event shall [Nabors] be entitled to payment for any loss of any profit as a result of such termination.

In the event that Nabors terminated the Contract pursuant to Article 11.1.3, i.e., for cause based on ADI's "unsatisfactory performance as set forth in Article IX above," Article 11.4 provided that ADI "shall not be entitled to any compensation whatever [sic]."

It is undisputed that ADI did not deliver Set 1 by the date specified in the Schedule of Delivery, that of October 31, 2014.  Rather, ADI delivered a portion of Set 1, the substructure, on December 15, 2014.  Nabors asserts that, not only was the substructure almost two months late, but it was defective, causing Nabors to incur $175,000.00 to remedy defects.  ADI did not complete the mast component of Set 1 until January 2015.  On February 3, 2014, after Sets 2, 3, and 4, which the Schedule of Delivery stated were due by November 30, 2014, December 31, 2014, and January 31, 2015, respectively, were not delivered, Nabors issued a change order to reduce the scope of the Contract to Set 1 and the mast component of Set 2.  Nabors demanded reimbursement of its milestone payments but stated that it was willing to reduce this sum by a mutually agreed upon amount for ADI's expenses on the three masts and four substructures being reduced.

On February 6, 2015, after the parties were unable to reach a resolution, Nabors sent ADI a Notice of Termination, stating that it was terminating the Contract, pursuant to Article 11.1.3, with respect to Sets 1 through 4, based on ADI's "unsatisfactory performance" under Article IX, i.e., inability to comply with the

6

agreed delivery deadlines. Nabors demanded, pursuant to Article 11.4, repayment of $2,804,681.10 that it had paid toward the equipment that ADI had failed to deliver. Noting that the terms of the Contract provided, however, that ADI's obligation to deliver was unconditional and effective notwithstanding any dispute regarding payment of some or all of the Contract Price, Nabors demanded that ADI deliver Set 5 by February 28, 2015, the remaining pending deadline under the Contract. Subsequently, however, after ADI failed to timely deliver Set 5, Nabors sent ADI notice that that it was terminating the Contract, pursuant to Article 11.1.3, with respect to Set 5, based on ADI's unsatisfactory performance.

ADI refused to return any of the sums paid toward the equipment that it had failed to deliver and refused to release the mast component of Set 1 unless Nabors paid an additional $358,186.40.

Nabors sued ADI, alleging that it had materially breached the Contract by failing to deliver the equipment as agreed. Nabors sought reimbursement of $2,388,228.00 in previous payments, as well as delivery and possession of the mast component of Set 1.

ADI filed a counterclaim for breach of contract and quantum meruit, alleging that Nabors had taken delivery of the mast component of Set 1, along with some of the materials for Sets 2 through 5, and had failed to pay $358,186.40 for work and materials supplied under the Contract.

7

Nabors moved for a summary judgment on its breach-of-contract claim, asserting that it was entitled to judgment as a matter of law because the Contract expressly provided for specific delivery deadlines and expressly stated that time was of the essence and that these terms were material. Noting that it was undisputed that ADI had failed to timely deliver Set 1, Nabors asserted that such failure to meet the deadlines in a contract in which time is of the essence, as here, constituted a material breach.

Based on ADI's breach, Nabors asserted that Article 11.1.3 authorized it to terminate the Contract for "unsatisfactory performance" as set forth in Article IX. Article IX authorized termination for failure to perform in a diligent manner or if ADI otherwise breached its obligations, as here. Nabors sent notice to ADI, expressly terminating the Contract pursuant to Article 11.1.3. And, Nabors noted that Article 11.4 provided that if the Contract were terminated pursuant to Article 11.1.3, "Contractor [ADI] shall not be entitled to any compensation whatever [sic]."

With respect to its damages, Nabors asserted that it had received only one of the five Sets for which it had contracted. The Contract Price per Set was $1,927,915.00. Nabors asserted that, after subtracting the maximum ten-percent penalty under Article 3.1 for late delivery, or $192,791.50, it owed ADI a total of $1,735,123.50 for Set 1. At the time of Nabors's termination of the Contract, it had paid ADI a total of $3,948,351.40, including its milestone payments on all five Sets

8

of equipment. Subtracting the total owed on Set 1 from the total it had paid, Nabors sought damages of $2,213,227.90. Nabors presented, as its summary-judgment evidence, the Contract; February 3, 2015 change order; February 6, 2015 Notice of Termination with respect to Sets 1–4; March 20, 2015 termination letter with respect to Set 5; a table of costs; affidavit of Nabors's Senior QA/QC Manager of the Engineering Department, Kevin Pennington; various emails between Nabors and ADI; deposition excerpts of ADI corporate representative, Joshua W. Norris; and ADI's responses to discovery.

In its summary-judgment response, ADI argued that Nabors had simply terminated the Contract at will, pursuant to Article 11.1.1, and not for cause, and thus it was not entitled to any reimbursement of its previous payments. ADI asserted that Nabors had previously stated that it was re-evaluating the Contract due to the downturn in the oil market. And, ADI had delivered equipment as much as two months late under a previous contract between the parties without issue. Further, Article 3.1 provided for a late delivery penalty. And, because the parties had thereby agreed to liquidated damages, late delivery could not serve as cause for termination under Article XI of the Contract. ADI argued that Article 2.2 of the Contract provided that milestone payments are due once the milestone is completed and, because ADI had completed the initial 20 percent milestones at the time of termination, such sums were not subject to refund.

9

ADI also filed a cross-motion for summary judgment, arguing that it was entitled to judgment as a matter of law on its breach-of-contract counterclaim. It asserted that neither Article 2.2 nor Article 11 provided for refunds. Further, ADI argued, the evidence established that it was entitled to $358,186.40 in unpaid milestone payments for the mast component of Set 1 because ADI had completed the work, and Nabors had approved and taken delivery of it.

The trial court granted summary judgment in favor of Nabors on its breach-of-contract claim and awarded it damages in the amount of $2,213,227.90. The trial court denied ADI's competing motion for summary judgment and dismissed ADI's counterclaim for breach of contract. After a trial to the court on the limited issue of attorney's fees, the trial court found that Nabors was entitled to reasonable and necessary attorneys' fees based on the terms of the Contract and pursuant to Texas Civil Practice & Remedies Code section 38.001. The trial court awarded Nabors attorney's fees in the amount of $161,023.51 and fees for appeal.

## Summary Judgment

In its first issue, ADI argues that the trial court erred in granting summary judgment in favor of Nabors on its claim because ADI presented evidence raising a fact issue regarding the applicable termination and damages provisions in the Contract. In its second and third issues, ADI argues that the trial court erred in granting Nabors's summary-judgment motion, and denying that of ADI, because the

10

trial court misconstrued the Contract as providing a right of reimbursement of funds that Nabors had paid prior to its termination of the Contract and the trial court failed to award ADI certain sums outstanding on Set 1.

## A.    *Standard of Review and Overarching Legal Principles*

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.— Houston [1st Dist.] 2005, pet. denied).

In a traditional motion for summary judgment, the movant has the burden to establish that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *KPMG Peat Marwick v. Harrison Cty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When a plaintiff moves for summary judgment on its own claim, the plaintiff must conclusively prove all essential elements of its cause of action. *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). When a defendant moves for a traditional summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action or

(2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *See Rhône–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

When both parties move for summary judgment on the same issue and the trial court grants one motion and denies the other, as here, the reviewing court considers the summary judgment evidence presented by both sides, determines all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment that the trial court should have rendered. *Valence Operating Co.*, 164 S.W.3d at 661.

**B.** *Breach of Contract*

To prevail on its respective breach-of-contract claim, each party was required to establish (1) a valid contract between the parties; (2) that the movant tendered performance or was excused from doing so; (3) that the non-movant breached the terms of the contract; and (4) that the movant sustained damages as a result of the

12

breach. *AMS Const. Co. v. K.H.K. Scaffolding Hous., Inc.*, 357 S.W.3d 30, 41 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd); *B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

Here, it is undisputed that the Contract constitutes a valid, enforceable agreement. It is also undisputed that ADI did not deliver Set 1 by the agreed upon date in the Schedule of Delivery and did not deliver Sets 2–5. It is further undisputed that Nabors terminated the Contract. The parties disagree as to the applicable termination provision in the Contract, i.e., Article 11.1.1 (authorizing termination at will) or Article 11.1.3 (authorizing termination for cause), which in turn governs the corresponding measure of damages.

### 1. *Applicable Termination and Damages Provisions*

In construing a written contract, a court must ascertain and give effect to the true intentions of the parties as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). We examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* We begin our analysis with the contract's express language. *Id.* And we analyze the provisions of a contract "with reference to the whole agreement." *Frost Nat'l Bank v. L & F Dists., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005); *see also Seagull Energy E&P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex. 2006) ("No single

13

provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument."). Contract terms will be given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co.*, 164 S.W.3d at 662. "We construe contracts 'from a utilitarian standpoint bearing in mind the particular business activity sought to be served' and 'will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.'" *Frost Nat'l Bank*, 165 S.W.3d at 312 (quoting *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987)).

If, after applying the pertinent contract construction rules, the contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and we will construe the contract as a matter of law. *Id*. If a contract "is subject to two or more reasonable interpretations after applying the pertinent rules of construction, the contract is ambiguous, creating a fact issue on the parties' intent." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). However, a contract is not ambiguous merely because the parties disagree on its meaning. *Seagull Energy E & P, Inc.*, 207 S.W.3d at 345. Only if a contract is ambiguous may we consider the parties' interpretation and consider extraneous evidence to determine the true meaning of the contract. *Italian Cowboy Partners, Ltd.*, 341 S.W.3d at 333–34.

14

Here, Article III of the Contract, governing delivery, provides:

3.1 *[ADI] shall complete the Work as set forth in [the Schedule of Delivery]. . . . [I]f any of the Equipment is delivered after the Penalty Date . . . , then [ADI] shall be liable to [Nabors] for liquidated damages in an amount equal to one (1%) of the Contract Price for each day that delivery is delayed, provided that in no event shall [ADI] be liable to [Nabors] for more than ten percent (10%) of the Contract Price.*

3.2 *Time is of the essence with respect to the performance of the Work and there shall be no extension or postponement of the Delivery Date. The Parties agree that this Article is a material term of this Contract for all purposes.*

(Emphasis added.) Thus, Article III provides that ADI was to complete the work by the deadlines set forth in the Schedule of Delivery. The parties agreed that time was of the essence, that there would be no extensions, and that this term is material. It is undisputed that ADI did not timely deliver Set 1 and did not deliver the remaining Sets. Thus, ADI's failure to timely deliver the equipment at issue constitutes a material breach of the Contract. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004); *Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Kennedy Ship & Repair, L.P. v. Pham*, 210 S.W.3d 11, 21 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that failure to timely deliver goods constituted breach).

The summary-judgment evidence shows that, based on ADI's breach of the Contract, Nabors, on February 6, 2015, sent ADI a Notice of Termination, stating

15

that, pursuant to Article 11.1.3, it was terminating the Contract with respect to Sets 1–4:

> Based on our numerous written attempts to get [ADI] to comply with the delivery deadlines for the first four [Sets] specified in the [Contract] and [ADI's] inability to comply given ample opportunity, *pursuant to Articles IX and XI of the Agreement*, Nabors is hereby providing you with notice that *the [Contract] is being terminated under Article 11.1.3 for unsatisfactory performance.* In accordance with the terms of Section 11.4 of the Agreement, Nabors demands return of all sums paid to date from Nabors, exclusive of the first substructure already delivered, totaling $2,804,681,10. In addition, Nabors requests, pursuant to Section 9.1.3 that Nabors be allowed to remove any and all Equipment in whatever stages of completion as well as other manufactured products related to the Equipment.

(Emphasis added.)

Further, Nabors's evidence shows that, on March 5, 2015, it sent ADI notice that, pursuant to Article 11.1.3, it was terminating the Contract with respect to Set 5:

> You were notified on February 6, 2015 that the [Contract] was terminated with respect to the first four [Sets] specified therein under Article 11.1.3 for unsatisfactory performance.
>
> You have already demonstrated [ADI's] inability to comply with the [Contract] with respect to the first four [Sets]. Given, your recent correspondence, you are clearly unwilling to comply with the Agreement with respect to the fifth [Set]. *You are hereby notified that the Agreement is being terminated under Article 11.1.3 for unsatisfactory performance with regard to [Set 5],* which was due on February 28, 2015. Pursuant to Section 11.4 of the [Contract], Nabors demands return of all sums paid for the fifth set, totaling $255,333.40.

(Emphasis added.)

16

Article XI, "Termination of the Contract," authorizes Nabors to terminate the Contract, either at will or for unsatisfactory performance, as follows:

11.1   This Contract may be terminated

    11.1.1      By [Nabors] upon 10 days' notice.

    . . . .

    11.1.3      By [Nabors] for unsatisfactory performance as set forth in Article IX above.

In the event that Nabors terminated the Contract pursuant to Article 11.1.1, i.e., at will, Article 11.2 provides the following damages model:

[Nabors] shall pay to [ADI] all amounts due and owing at the date of termination together with reasonable additional costs incurred by [ADI] in terminating the Work including if applicable, costs of shipping and the costs of cancellation of subcontracts or purchase orders for materials, equipment and supplies. In no event shall [ADI] be entitled to payment for any loss of any profit as a result of such termination.

However, in the event that Nabors terminated the Contract pursuant to Article 11.1.3, i.e., for cause based on ADI's "unsatisfactory performance as set forth in Article IX," as here, Article 11.4 provides that ADI "shall not be entitled to any compensation whatever [sic]."

Article IX defines "unsatisfactory performance" as including any failure by ADI to conduct its operations diligently or any breach of the Contract by ADI and authorizes Nabors to elect to cover or to pursue "*any and all other remedies available to [Nabors] in law or equity*":

9.1    *If [ADI] has failed to conduct its operations under this Contract in a diligent, skillful or workmanlike manner . . . , or if the [ADI]*

*has otherwise breached its obligations hereunder*, [Nabors] may give [ADI] written notice in which the cause of the dissatisfaction shall be specified. Should [ADI] fail to remedy the dissatisfaction within five (5) days after the receipt of the written notice, [Nabors] may, at its discretion take one of the following courses of action:

9.1.1 [Nabors] may retain another Contractor ("Substitute Contractor") to complete the remaining Work. In such event [Nabors] shall have no obligation to pay [ADI] any additional sums whatsoever and [ADI] shall be responsible to pay to [Nabors] the difference between the outstanding relevant Purchase Order and the actual cost of completing the Work with the Substitute Contractor.

9.1.2 [Nabors] may take over and complete the Work using [ADI's] facilities, equipment and personnel . . . .

9.1.3 Upon [Nabors's] request and pursuant to [Article XI], [ADI] shall allow [Nabors] to remove any and all Equipment in whatever stages of completion as well as other manufactured products related to the Equipment.

9.2 *The remedies set forth in this Article are in addition to, and not in lieu of any and all other remedies available to [Nabors] in law or equity.*

(Emphasis added.) Thus, the summary-judgment evidence shows that Nabors expressly terminated the Contract under Article 11.1.3, based on ADI's "unsatisfactory performance," and that the Contract authorized such termination.

ADI, in its summary-judgment response and in its brief, argues that it presented evidence creating a fact issue regarding whether Nabors actually terminated the Contract at will, pursuant to Article 11.1.1, and not for cause, pursuant to Article 11.1.3. Specifically, ADI points to an email from Nabors, dated January 15, 2015, in which Nabors, noting that the "global drilling industry had

18

recently begun showing signs of a dramatic slowdown," asked ADI for an "immediate update on cost to date for the remaining mast and sub orders." And, Nabors stated that the purpose of its request was to "determine whether [to] proceed or cancel some or all of the remaining orders." ADI argues that this evidence establishes that Nabors's representation that its termination of the Contract was based on ADI's failure to timely deliver equipment was simply pretext for its at-will termination based on market conditions.

Taking as true, as we must, the evidence that Nabors considered whether to proceed on its outstanding orders based on market conditions does not, however, negate or contradict the evidence that, ultimately, Nabors expressly terminated the Contract pursuant to Article 11.1.3, "for unsatisfactory performance as set forth in Article IX," based on ADI's undisputed failure to deliver the Sets as agreed.

Next, ADI argues that the "parties' ongoing course of conduct" demonstrates that Nabors did not actually terminate the Contract for cause. ADI points to its summary-judgment evidence that Nabors previously accepted late delivery of three rigs in "a prior contract between the Parties in 2013-2014."

A "'course of dealing' is a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." TEX. BUS. & COM. CODE § 1.303. Because a sequence of events

19

is required, a single transaction cannot constitute a course of dealing.  *See Shell Trading (US) Co. v. Lion Oil Trading & Transp., Inc*., No. 14-11-00289-CV, 2012 WL 3958029, at \*6, 8 (Tex. App.—Houston [14th Dist.] Sep. 11, 2012, pet. denied) (mem. op.).

ADI further argues that Nabors could not have terminated the Contract for cause under Article 11.1.3 because Article 3.1 of the Contract provides that the remedy for a failure to timely deliver is "not termination but merely a late delivery penalty of no more than 10% of the Contract price."  Without citation to authority, ADI asserts that, because the parties "agreed to liquidated damages in the event of late delivery, late delivery cannot be a cause for termination."  Again, Article 3.1 states:

> 3.1  [ADI] shall complete the Work as set forth in [Schedule of Delivery]. . . . [I]f any of the Equipment is delivered after the Penalty Date . . . , then [ADI] shall be liable to [Nabors] for liquidated damages in an amount equal to one (1%) of the Contract Price for each day that delivery is delayed, provided that in no event shall [ADI] be liable to [Nabors] for more than ten percent (10%) of the Contract Price.

Setting aside that ADI seems to posit that it could simply accept a ten percent penalty and perpetually delay delivery of any equipment, ADI's argument overlooks that we must analyze Article 3.1 with reference to the whole agreement and give effect to all the provisions so that none will be rendered meaningless.  *See Italian Cowboy Partners, Ltd*., 341 S.W.3d at 333 (noting that we examine and consider

20

entire writing in effort to harmonize); *Frost Nat'l Bank*, 165 S.W.3d at 312; *see also Seagull Energy E&P, Inc.*, 207 S.W.3d at 345 ("No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.").

The language used in Article 3.1 caps the amount of damages for which ADI will be liable in the event that Nabors sought recovery on a claim for delay damages, i.e., in a claim for consequential damages based on ADI failing to deliver the equipment on time. *See Valence Operating Co.*, 164 S.W.3d at 662 (noting we give contract terms their plain, ordinary, and generally accepted meanings). Article 3.1 does not state that it constitutes the sole remedy in the event of a termination of the Contract.

Rather, as discussed above, Article XI, which governs "Termination of the Contract," has its own damages provisions, i.e., Articles 11.2 and 11.4. And, Article XI expressly authorizes Nabors to "terminate" the Contract for "unsatisfactory performance" under Article IX, which includes circumstances in which ADI has "*failed to conduct its operations* under this Contract *in a diligent*, skillful or workmanlike *manner . . .* , *or if [ADI] has otherwise breached its obligations hereunder.*" (Emphasis added.)

Taking as true all evidence favorable to ADI and indulging every reasonable inference in its favor, we conclude that Nabors has conclusively established that it

21

terminated the Contract pursuant to Article 11.1.3, "for unsatisfactory performance as set forth in Article IX," based on ADI's undisputed failure to deliver the Sets as agreed.

We overrule ADI's first issue.

**2.     *Nabors's Damages***

In its second issue, ADI argues that the trial court erred in granting Nabors's motion for summary judgment as to its damages because ADI established that the trial court misconstrued the Contract as authorizing a "reimbursement" or a "refund" of the first milestone payment pertaining to each Set.

We concluded above that Nabors terminated the Contract pursuant to Article 11.1.3. Article 11.4 expressly provides that if Nabors terminates the Contract pursuant to Article 11.1.3, ADI "shall not be entitled to any compensation whatever [sic]."

Nabors's summary-judgment evidence shows that Pennington, in his affidavit, testified that, at the time of Nabors's termination of the Contract, it had paid ADI a total of $3,948,351.40 but had received only 1 of the 5 Sets for which it had contracted. Thus, testified Pennington, ADI was entitled to payment for Set 1, or $1,927,915.00, less the ten percent penalty under Article 3.1 for its late delivery of the equipment, or $197,791.50, for a total of $1,735,123.50. And, subtracting this amount from the amount that Nabors paid had ADI, $3,948,351.40, established

22

Nabors's damages in the amount of $2,213,227.90. The trial court's judgment reflects that it awarded Nabors damages in the amount of $2,213,227.90.

ADI, in its summary-judgment response, asserted that it was entitled to retain Nabors's initial "20% Milestone payments" under Article 2.2 for each of the "remaining rigs," i.e., Sets 2 through 5. Article 2.2 provides for payment of "20% of [the] Contract Price within 10 days of execution of [the] Contract by both parties." ADI asserts that this initial 20 percent functioned as a "down payment" or "booking fee" on Sets 2 through 5 and that, notwithstanding that they were not delivered, neither Article 2.2 nor Article XI provides for any "refund" of milestone payments.

Again, Article 11.4 expressly provides that if the Contract is terminated pursuant to Article 11.1.3, as here, then ADI "shall not be entitled to any compensation whatever [sic]."

We conclude that ADI did not present evidence raising a genuine issue of material fact concerning the calculation of Nabors's damages and that Nabors conclusively established its damages. We hold that the trial court did not err in granting summary judgment for Nabors on its breach-of-contract claim.

We overrule ADI's second issue.

### 3. *ADI's Damages*

In its third issue, ADI argues that the trial court erred in denying its motion for summary judgment on its counterclaim because its evidence shows that Nabors

23

breached the contract by failing to pay an outstanding balance of $358,186.40 for "the unpaid Milestone payments related to Mast 1," i.e. the mast component of Set 1. In support, ADI presented the affidavit of its representative, Norris, who testified, in pertinent part:

4. Under Section 2.2 of the Contract, Nabors was required to pay 20% of the Contract price of each mast or substructure to ADI within 10 days of the execution of the Contract, 25% of the Contract price of each mast or substructure to ADI upon receipt of all structural steel for each mast or substructure, 45% of the Contract price for each mast or substructure to ADI upon completion of all work for each mast or substructure, and 10% of the Contract price for each mast or substructure to ADI upon delivery of each mast or substructure. . . . Nabors has made all payments required of it by Section 2.2 of the Contract, *except for the 45% and 10% payments regarding Mast 1.* . . . Nabors owes ADI a balance of $358,186.40 for those unpaid Milestones.

5. ADI has made not less than two (2) written demands to Nabors requesting payment of the $358,186.40 balance due for the unpaid *Mast 1 Milestones* but, as of this date, Nabors has refused to pay. . . .

(Emphasis added.)

As discussed above, the trial court's judgment reflects that the trial court credited ADI with the full Contract price of Set 1, including both the mast and substructure, against the damages that the trial court awarded to Nabors. Thus, the record does not support ADI's issue on appeal. Accordingly, we hold that the trial court did not err in denying ADI's motion for summary judgment.

We overrule ADI's third issue.

24

**Attorney's Fees**

In its fourth issue, ADI argues that the trial court erred in awarding attorney's fees to Nabors that "(1) exceed what was reasonable and necessary to achieve the results obtained; and/or (2) were not reduced sufficiently to segregate Nabors' warranty claims." ADI asserts that, during trial on the limited issue of attorney's fees, its expert, Stephen A. Mendel, testified that the "fee invoices produced by Nabors included hours worked that were not necessary to achieve the results that Nabors's counsel obtained" and included discovery that was "irrelevant to the outcome of the case." ADI asserts that a "reasonable fee for the results Nabors' counsel achieved would be approximately $45,000.00." ADI further asserts that, although Nabors segregated its fees pertaining to previous warranty claims and reduced its fees by "5-10%" for related tasks, "the reduction should have been 19.4%."

In its brief, ADI presents its assertions globally and does not present argument or analysis with respect to any specific fees or discovery matters. Further, ADI does not present a single citation to legal authority to support its argument under this point. As such, we conclude that this issue is inadequately briefed and presents nothing for our review. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities . . . ."); *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106

25

S.W.3d 118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (concluding that "Rule 38 requires [the appellant] to provide us with such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue" and that "[t]his is not done by merely uttering brief conclusory statements, unsupported by legal citations," and holding that appellant waived its complaints "[b]y presenting such attenuated, unsupported argument"); *see also Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied) ("An issue on appeal unsupported by argument or citation to any legal authority presents nothing for the court to review.").

We hold that ADI has waived its fourth issue.

## Conclusion

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Kelly and Goodman.